[No. 32415-2-I.    Division One.    May 2, 1994.]

APPLIED INDUSTRIAL MATERIALS CORPORATION,
*Petitioner*, v. NEWELL R. MELTON, ET AL, *Respondents*.

*Andrew H. Salter, Beth M. Andrus,* and *Miller, Nash, Wiener, Hager & Carlsen,* for petitioner.

*Steven B. Tubbs* and *Schwabe, Williamson & Wyatt,* for respondents.

KENNEDY, J. — In February 1992, Applied Industrial Materials Corporation (AIMCOR) filed an action against Melton, Smith and Pacific Rim Olivine, Inc. (Pacific Rim), to quiet title in 34 mining claims. AIMCOR and its predecessors originally "located"[1] all of these claims. In early 1989, Pacific Rim attempted to "relocate"[2] the claims.

The trial court originally granted AIMCOR's motion for summary judgment, but on reconsideration it ruled as a matter of law that RCW 78.08.090[3] does not require anything more to relocate a mining claim than compliance with RCW 78.08.060,[4] the statute relating to location of a claim. The trial

---

[1] In mining law, "location" refers to: "[t]he act of appropriating a mining claim (parcel of land containing precious metal in its soil or rock) according to certain established rules." Black's Law Dictionary 940 (6th ed. 1990). In Washington, this procedure is governed by RCW 78.08.060.

[2] In mining law, "relocation" refers to: "a new or fresh location of an abandoned or forfeited mining claim by a stranger, or by the original locator when he wishes to change the boundaries or to correct mistakes in the original location." Black's Law Dictionary 1292 (6th ed. 1990). In Washington, this procedure is governed by RCW 78.08.090.

[3] RCW 78.08.090 provides:

"The relocation of a forfeited or abandoned quartz or lode claim shall only be made by sinking a new discovery shaft, or in lieu thereof performing at least an equal amount of development work within the borders of the claim, and fixing new boundaries in the same manner and to the same extent as is required in making a new location, or the relocator may sink the original discovery shaft ten feet deeper than it was at the date of commencement of such relocation, and shall erect new, or make the old monuments the same as originally required; in either case a new location monument shall be erected." This statute was last amended in 1949.

[4] RCW 78.08.060 provides in part:

"(1) Before filing such [location] notice for record, the discoverer shall locate his claim by posting at the discovery at the time of discovery a notice containing the name of the lode, the name of the locator or locators, and the date of discovery, and

court also found that there were genuine issues of material fact regarding the sufficiency of Pacific Rim's "monumentation".[5] Based on these two findings, the trial court denied AIMCOR's motion for summary judgment.[6] We granted discretionary review, and now reverse and remand for entry of judgment in favor of AIMCOR.

## FACTS

AIMCOR held 34 mining claims on federal land within the Mt. Baker/Snoqualmie National Forest. In the assessment year ending September 1, 1988, AIMCOR did not perform its annual assessment work, making it possible for others to relocate these claims.[7]

In early 1989, Melton[8] and Smith, acting on behalf of Pacific Rim, attempted to relocate all 34 of AIMCOR's mining claims. Pacific Rim recorded location notices with the Skagit County Auditor's office. Pacific Rim alleges that it staked a single relocation notice on each of the 34 claims. However, Pacific Rim conceded that it had not posted monu-

marking the surface boundaries of the claim by placing substantial posts or stone monuments bearing the name of the lode and date of location; one post or monument must appear at each corner of such claim; such posts or monuments must be not less than three feet high; if posts are used they shall be not less than four inches in diameter and shall be set in the ground in a substantial manner."

[5]By "monumentation" the parties are referring to a portion of the location requirements in RCW 78.08.060, namely, marking the surface boundaries of a claim by placing posts or stone monuments.

[6]Summary judgment is only granted where there are no questions of material fact and one party is entitled to judgment as a matter of law. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). On review, this court engages in the same inquiry as the trial court. *Marincovich*, 114 Wn.2d at 274.

[7]30 U.S.C. § 28 (1988) provides: "On each claim located after the 10th day of May 1872, and until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year . . . and upon a failure to comply with [the assessment condition], the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made . . .."

[8]Melton was a former plant manager at the Hamilton, Washington, facility now owned by AIMCOR. He was thoroughly familiar with AIMCOR's mining claims and had participated in the original location of four of the claims in 1978.

ments at each corner, sunk a new discovery shaft or conducted any development work on any of the claims.[9]

## DISCUSSION

As an initial matter, we reject Pacific Rim's contention that under the federal mining law of 1872 states may not enact statutes that create different requirements for location and relocation of mining claims. The federal mining law of 1872, as amended, includes no such prohibition.

■ On the contrary, the federal statutes and mining regulations require that relocators comply with *both* state and federal law. *See Clason v. Matko*, 223 U.S. 646, 654-55, 56 L. Ed. 588, 32 S. Ct. 392 (1912) (upholding state statute requiring additional notice provisions for relocation of mining claim; noting that the federal requirements may not be dispensed with, but they may be supplemented by state law if it is not repugnant to the letter or the spirit of the federal law).

Pacific Rim has failed to establish that RCW 78.08.090 is so contrary to federal law as to be in conflict with or repugnant to 30 U.S.C. § 28. Like the statute at issue in *Clason*, RCW 78.08.090 merely sets forth the procedures that a relo-

---

[9]On May 6, 1989, AIMCOR's plant manager, Dennis R. Wheeland, investigated several of the relocation sites. Wheeland alleged he found only a single metal post erected alongside the access road. Attached to the post was a small plywood board displaying copies of all 34 of Pacific Rim's relocation notices. Wheeland explored the area looking for corner posts or other evidence that Pacific Rim had marked the boundaries of the claim. Wheeland alleged that he searched a total of eight location sites, but found only the one set of relocation notices.

AIMCOR engaged the services of Skagit Surveyors, Inc., to follow the boundaries of AIMCOR's claims to determine whether Melton and Smith had staked new corner posts, erected discovery monuments or posted notices on AIMCOR's claims. Skagit Surveyors reported that they found nothing to indicate that Melton and Smith had properly relocated the mining claims.

Pacific Rim contends that the relocation notices it posted at some of the claims later disappeared. Given AIMCOR's and Pacific Rim's inconsistent allegations regarding the sufficiency of monumentation, we agree with the trial court that genuine issues of fact do exist concerning this issue. Whether the issue is *material* is a separate question, however. In view of the trial court's erroneous interpretation of the relocation statute, the sufficiency of the monumentation is not material. Even if Pacific Rim properly monumented its relocation attempt, its failure to comply with the remainder of the statutory relocation requirements defeats its claim.

cator must follow to take advantage of the federal right set out in 30 U.S.C. § 28, and does not, by its operation, divest the relocator of this right. *See also Knutson v. Fredlund,* 56 Wash. 634, 638-39, 106 P. 200 (1910) (defects in relocation notices render relocation invalid).

As a second preliminary matter, we agree with Pacific Rim that its motion for reconsideration by the trial court was timely. AIMCOR challenged the trial court's use of the Supplemental Declaration of Tony Smith, submitted by Pacific Rim after the trial court ruled initially in favor of AIMCOR on its motion for summary judgment.

■ In the context of a summary judgment, unlike a trial, there is no prejudice to any findings if additional facts are considered. *Meridian Minerals Co. v. King Cy.,* 61 Wn. App. 195, 203, 810 P.2d 31, *review denied,* 117 Wn.2d 1017 (1991). "Although not encouraged, a party may submit additional evidence after a decision on summary judgment has been rendered, but before a formal order has been entered." *Meridian Minerals,* 61 Wn. App. at 202-03.

Here, it was permissible for the trial court to entertain the motion for reconsideration. The only problem is that, upon doing so, the trial court reached the wrong legal conclusion as to the construction of RCW 78.08.090.

RCW 78.08.090, on its face, is unambiguous. By its terms, this statute requires a relocator to: sink a new discovery shaft and fix claim boundaries in the same manner described in RCW 78.08.060; *or* engage in an equal amount of development work and fix the claim boundaries in the same manner as described in section .060; *or* sink a preexisting discovery shaft 10 feet deeper and erect new location monuments.

It is undisputed that Pacific Rim failed to fully comply with any of the three alternative requirements under the relocation statute. Instead, Pacific Rim contends that the intention of the Legislature is not reflected in the plain words of the statute. Specifically, Pacific Rim contends that the Legislature's failure to amend RCW 78.08.090 when it amended RCW 78.08.060 in 1963 was merely an oversight.

Looking at the legislative history of RCW 78.08, we are unable to find any indication that the Legislature's failure to amend section .090 so as to comply with the amended section .060 was by way of oversight, rather than design. Therefore, we reject Pacific Rim's contention to the contrary.[10]

■■ Even if this court were persuaded by Pacific Rim's argument that the Legislature "overlooked" the significance of section .090 when it last amended section .060, there are limits on a court's authority to add or subtract provisions, thus effectively "rewriting" a statute in the name of statutory construction.[11]

If a statute's language is clear, its plain meaning must be given effect without resort to rules of statutory construction, and when the language of a statute is clear, the courts must apply its obvious meaning. *Pasco v. Ross*, 39 Wn. App. 480, 484, 694 P.2d 37 (1985) (citing *State v. Theilken*, 102 Wn.2d

[10]We so conclude, notwithstanding the following commentary:

Section 78.08.060 was amended in 1965, [*sic*] repealing the requirement for discovery work at the time of original location. Apparently the reference in this section to discovery work for a relocation was missed. It is doubtful that discovery work at the time of a relocation would be enforced after 1965 [*sic*].

Rocky Mt. Mineral Law Found., *Digest of Mining Claim Laws* 150 (4th ed. 1990) (the amendment to section .060 to which this commentary refers actually occurred in 1963 and not in 1965).

[11]"Words may be eliminated only when such action is consistent with the legislative intent or meaning. However, it must be certain that the legislature could not possibly have intended the words to be in the statute, and that the rejection of them serves merely as a correction of careless language and actually gives the true intention of the legislature. . . . Courts permit the elimination of words for one or more of the following reasons: where the word is found in the statute due to the inadvertence of the legislature, where it is necessary to give the act meaning, effect, or intelligibility, where apparent from the context of the act that the word is surplusage, where the use of the word would lead to an absurdity or irrationality, where the inclusion of the word was a mere inaccuracy, or clearly apparent mishap, or it was obviously erroneously inserted, where the use of the word is the result of a typographical or clerical error, where it is necessary to avoid inconsistencies and to make the provisions of the act harmonize, where the words of the statute do not have any useful purpose or are entirely foreign to the subject matter of the enactment, or where it is apparent from the caption of the act or body of the bill that the word is surplusage." (Footnotes omitted.) 2A Norman J. Singer, *Statutory Construction* § 47.37 (5th ed. 1992). *Accord Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 859, 774 P.2d 1199, 779 P.2d 697 (1989).

271, 275, 684 P.2d 709 (1984)). A legislative body is presumed not to have used superfluous words. Courts are bound to accord meaning, if possible, to every word in a statute. *State v. Lundquist*, 60 Wn.2d 397, 403, 374 P.2d 246 (1962) (citing *Group Health Coop. v. King Cy. Med. Soc'y*, 39 Wn.2d 586, 637, 237 P.2d 737 (1951)).

In construing a statute, it is always safer not to add to, or subtract from, the language of the statute unless imperatively required to make it a rational statute. *McKay v. Department of Labor & Indus.*, 180 Wash. 191, 194, 39 P.2d 997, 98 A.L.R. 990 (1934); *State v. Taylor*, 97 Wn.2d 724, 728, 649 P.2d 633 (1982); *State v. Edwards*, 104 Wn.2d 63, 67-68, 701 P.2d 508 (1985). The general rule is that

> [c]ourts must . . . construe statutes as they are written. They may not rewrite them to suit their views of what they think the statutes ought to say or to avoid difficulties in construing and applying them.

*Arkansas Oak Flooring Co. v. Louisiana & Ark. Ry.*, 166 F.2d 98, 101 (5th Cir.), *cert. denied*, 334 U.S. 828 (1948).

Notwithstanding these well-settled rules of statutory construction, Pacific Rim contends that the interpretation of RCW 78.08.060 is controlled by the holding of *National Milling & Mining Co. v. Piccolo*, 57 Wash. 572, 107 P. 353 (1910), and, therefore, that we should affirm the trial court. In *National Milling* the Supreme Court held that a then existing and since repealed statutory exception relating to the sinking of a discovery shaft for the *location* of a claim west of the summit of the Cascade Mountains also applied to *relocation* of claims west of the summit of the Cascade Mountains. 57 Wash. at 575-76. The reasoning of the *National Milling* court was that a relocation of a forfeited or abandoned claim was as much a "location" as an original discoverer's location and it would be erroneous to restrict a generally applicable statute to only one type of "location". *National Milling*, 57 Wash. at 576. Therefore, according to Pacific Rim, this court is bound to consider an abandoned or forfeited claim as no different from an original locator's claim for purposes of

satisfying the "location" requirements of RCW 78.08.060 and .090.

AIMCOR responds that the 1963 amendment to RCW 78.08.060, making location of a claim easier by eliminating the discovery shaft requirement, was intended to overrule *National Milling*.

Although we think AIMCOR goes too far in saying that the Legislature, by its 1963 amendment to section .060, "overruled" *National Milling* (the statutory provision the *National* court was interpreting was repealed in 1955), the Legislature's adherence to the 1949 version of section .090 when it amended the location statute in 1963 can indeed be logically justified as the dissent suggested in *National*.[12] Thus, we may reasonably infer that the Legislature's adherence to section .090 was a conscious departure from the reasoning of the *National* majority.

For all of the reasons noted above, we hold that the trial court erred when it ruled as a matter of law that RCW 78.08.090 is to be read as if it had been amended to reflect the 1963 version of section .060. We reverse the trial court's denial of AIMCOR's motion for summary judgment and remand for entry of judgment in favor of AIMCOR.

PEKELIS, A.C.J., and COLEMAN, J., concur.

---

[12] "The [relocation] statute undertook to put upon the one who claims mining ground as abandoned or forfeited a burden that was not imposed upon an original locator; and properly so, for the one who takes abandoned ground takes more than the mere land. He reaps the reward of another's foresight and industry. . . . [T]here can be, and it was the intent of the law of 1899 to compel, some expenditure of time and money on the part of the one who jumps the claim of another. The object of the law of 1899 was to make claim jumping hard." *National Milling*, 57 Wash. at 577-78 (Chadwick, J., dissenting).