FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 APR 30 AM 11: 07



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| WHITE RIVER FEED COMPANY, a Washington corporation, | ) ) ) | No. 76562-1-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| KRUSE FAMILY, LP, a Washington liability company, doing business as KRUSE FAMILY DAIRY, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: April 30, 2018 |

SPEARMAN, J. — Following an incident of severe illness among its dairy herd, Kruse Family, LP (Kruse) filed suit against White River Feed Company, Inc. (White River) seeking to recover damages. Kruse's expert opined that there was an 80 percent probability that the cause of illness was salmonella poisoning originating from White River's feed. White River moved for summary judgment, arguing that the opinion of Kruse's expert regarding causation was speculative and drawn from assumptions not existing in the evidence. The trial court granted summary judgment to White River and denied Kruse's subsequent motion for reconsideration. We conclude that Kruse has not established the existence of a genuine issue of material fact as to whether White River's grain was the source of contamination, and we affirm.

## FACTS

Kruse is a dairy operation located in Enumclaw, Washington. In April 2013, Kruse's dairy herd included approximately 200 milking cows, as well as bulls, dry cows (those not currently producing milk), and calves. White River is a manufacturer and seller of livestock feed located in Kent, Washington. White River creates custom feed blends, mixing the grain one ton at a time and delivering the feed to its customers.

In April 2013, Kruse received three deliveries of grain from White River. The first was delivered on April 11, the second on April 15, and the third on April 18. The April 18 shipment consisted of 15,020 pounds of grain.

On April 17, the milk cows began consuming the first "green chop" of the season (freshly-cut grass harvested from the Kruse farm). On April 18, the milk cows also began consuming grain from the April 18 shipment. On April 19, the milk cows suddenly began to develop severe diarrhea and poor appetite. On April 22, Brad Kruse called Dr. Peter Sathre, a large animal and dairy farm veterinarian who has worked with Kruse since 1991. The following day, Dr. Sathre came to the Kruse dairy to examine the cows. Dr. Sathre initially suspected that the problem was caused by ionophore toxicity. However, based on subsequent laboratory testing and analysis, as well as his own observations and discussion with the Kruses, Dr. Sathre eventually formed the opinion that the milk cows suffered from salmonella poisoning.

Dr. Sathre collected two pounds of grain from a five gallon bucket in the calf barn, which the Kruses said originated from the April 18 delivery. Dr. Sathre sent three samples out for laboratory testing. All three samples tested negative for salmonella. The first cut of green chop was gone by that time, so Dr. Sathre did not have it tested. He

nevertheless concluded that there was an 80 percent probability that the cows became ill from salmonella originating from the April 18 shipment of White River grain. His opinion was based largely on his observation that the bulls and dry cows ate green chop, did not eat grain, and did not become ill.

On June 12, 2015, Kruse filed suit against White River seeking to recover damages for injury to its dairy herd allegedly caused by salmonella contaminated grain. According to Kruse, as a result of this incident, 20-25 milking cows died or had to be culled, 30 more lost so much weight that they had to be sold for beef, dozens of fetuses were aborted, and milk production dropped sharply.

On July 8, 2015, White River filed an answer and counterclaim for breach of contract and unjust enrichment based on Kruse's alleged failure to pay the full amount owing on its account with White River. On September 15, 2015, Kruse answered White River's counterclaim with a demand for jury trial.[1] On September 30, 2015, White River moved for summary judgment, arguing that Kruse had failed to create a question of material fact as to whether White River's grain caused the cows to become sick from salmonella.

In support of its motion, White River offered the declaration of large animal veterinarian Dr. Michael Lane. Dr. Lane opined that the data were insufficient to allow any expert to conclusively determine whether the cows' sickness was due to coronavirus, salmonella, nitrate poisoning, or some combination. Dr. Lane concluded that, even if salmonella did cause the sickness, White River's grain was not the source on a more probable than not basis because (1) all three tests on the grain were

---

[1] The trial court later granted Kruse's motion for limited judgment and certification for immediate appeal, and its motion to stay trial on White River's counterclaims pending resolution of this appeal.

negative for salmonella, (2) the grain moisture content was too low for productive growth of salmonella, (3) the calves were fed the same grain as the milk cows, yet did not get sick, and (4) five other local dairies received shipments of grain from White River the same week the Kruse milk cows fell ill, yet none reported problems. Dr. Lane also opined that determining the source of salmonella in this case is impossible due to the fact that the green chop was never tested. He explained that on dairies, salmonella can originate from the feces of mice, rats, dogs, cats, birds, deer, and elk, all of which had access to the field of grass from which the green chop was harvested.

Kruse opposed White River's motion for summary judgment. In support, Kruse submitted the declaration of Dr. Sathre. Dr. Sathre stated that the symptoms he observed were consistent with salmonella. He pointed out that tests detected the presence of salmonella in tissues from two dead cows, and that tests on an aborted calf "conclusively established that the calf was aborted due to an active, clinical salmonella infection, of the same strain found in the two cows autopsied." Clerk's Papers (CP) at 172. Dr. Sathre opined that the fact that five other abortions occurred in the same time frame creates a "very strong inference" that all the abortions were due to salmonella. Id. The same rat-borne strain was found in all three tested animals, another fact he found "very significant." Id. Dr. Sathre said he considered and ruled out through observation and laboratory testing other possible causes of illness in the milk cows, including coccidia, coronavirus, and nitrate poisoning.

As for the source of the salmonella, Dr. Sathre opined that only two viable options existed: the White River feed delivered to Kruse on April 18, 2013, or the green chop fed to the milk cows on April 17, 2013. In concluding that the grain was culprit, Dr.

4

Sathre placed great significance on the fact that during the same time frame, Kruse's bulls and dry cows ate green chop but not grain, and did not get sick. In contrast, the milk cows ate both grain and green chop, and got sick. He therefore deduced that the grain was the most likely source of contamination. Dr. Sathre acknowledged that the calves were fed grain and did not get sick, but expressed doubt that the calves had actually consumed the same grain that sickened the milk cows. Dr. Sathre concluded that there was an 80 percent probability that Kruse's cows were poisoned by salmonella from grain delivered by White River on April 18, 2013.

On October 28, 2016, the trial court granted summary judgment to White River. On November 7, 2016, Kruse moved for reconsideration, arguing that the trial court ignored circumstantial evidence of causation and placed undue weight on the fact that three grain samples tested negative for salmonella. In support, Kruse submitted the declaration of large animal veterinarian Dr. John Maas. Dr. Maas opined that, from a scientific perspective, it is incorrect to conclude that the test results show that the entire batch of grain must have been negative for salmonella. White River opposed the motion and argued that the trial court should refuse to consider the declaration of Dr. Maas. The trial court considered the declaration of Dr. Maas, but denied Kruse's motion for reconsideration. Kruse now appeals.

<u>DISCUSSION</u>

<u>Summary Judgment</u>

This court reviews de novo a trial court's decision to grant summary judgment. <u>Lakey v. Puget Sound Energy, Inc.</u>, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). A motion for summary judgment is properly granted when "there is no genuine issue as to

any material fact and ... the moving party is entitled to a judgment as a matter of law." CR 56(c). "In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact." Young v. Key Pharmaceuticals, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (citing LaPlante v. State, 85 Wn.2d 154, 158, 531 P.2d 299 (1975)). If the moving party is a defendant and meets this showing, the burden then shifts to the nonmoving party to "set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact." Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986). The court views the facts and reasonable inferences in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). "The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain." Little v. Countrywood Homes, Inc., 132 Wn. App. 777, 780, 133 P.3d 944 (2006). "'The cause of an accident may be said to be speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another.'" Moore v. Hagge, 158 Wn. App. 137, 148, 241 P.3d 787 (2010) (quoting Jankelson v. Sisters of Charity of House of Providence in Territory of Wash, 17 Wn.2d 631, 643, 136 P.2d 720 (1943)).

Kruse argues that Dr. Sathre's opinion that White River's grain, not the green chop, was most likely the source of the salmonella poisoning raise a disputed issue of material fact sufficient to defeat White River's summary judgment motion. Dr. Sathre noted that the milk cows became ill after eating both grain and green chop. In contrast, the bulls and dry cows ate green chop but not grain, and did not become ill. He therefore deduced that the grain, not the green chop, was the most likely source of

6

salmonella. Dr. Sathre stated in his declaration that this evidence was the "most significant" basis for his opinion. CP at 172. And in his deposition, when asked whether there was any other basis for his opinion that the grain was the cause, he answered, "[t]hat's really pretty much it."[2] CP at 133.

Dr. Sathre's opinion thus rests on the assumption that the milk cows were the only animals to eat the contaminated grain. However, there is evidence in the record that the calves were also fed grain on a daily basis, yet did not fall ill. Brad Kruse testified that it is the dairy's regular practice to feed the older calves twice per day with grain collected from the milk cows' feeding hopper. He also testified that it is regular practice to offer younger calves a small portion of "crumbs" swept from the milk cows' feeding hopper two or three times per week, in addition to their primary diet of milk. CP at 459. There is no evidence in the record that the Kruses deviated from their regular practice that day.

Nonetheless, Dr. Sathre suggested various reasons why the calves did not fall ill. First, he hypothesized that some of the calves may have consumed only milk and refused to eat the crumbs that were offered to them.[3] Second, given that the grain was mixed one ton at a time, Dr. Sathre thought the milk cows could have consumed the entire contaminated portion of grain before the Kruses collected grain for the calves. Third, Dr. Sathre expressed uncertainty as to whether the grain samples that tested negative for salmonella, all of which he collected from a bucket in the calf barn, came

---

[2] Dr. Sathre added that another factor influencing his opinion is that "the timing is right for it." CP at 133. Given that the milk cows ate both green chop and grain within the same 24-48 hour time frame before falling ill, it is difficult to understand how timing could have helped him rule out green chop as the source of contamination.

[3] This explanation would presumably not apply to the older calves, which are fed grain and hay rather than milk and crumbs.

7

from the same grain eaten by the milk cows on April 18, 2013. Dr. Sathre said the Kruses believed the bucket contained grain collected from the April 18 delivery, but he expressed doubt as to whether that is what actually occurred.[4]

We conclude that Kruse has not established the existence of a genuine issue of material fact as to whether White River's grain was the source of contamination.[5] A plaintiff may prove causation by circumstantial evidence. Ripley v. Lanzer, 152 Wn. App. 296, 307, 215 P.3d 1020 (2009). "However, if the plaintiff, as the nonmoving party, can only offer a 'scintilla' of evidence, evidence that is 'merely colorable', or evidence that 'is not significantly probative', the plaintiff will not defeat the motion. Seiber v. Poulsbo Marine Center, Inc., 136 Wn. App. 731, 736, 150 P.3d 633 (2007) (quoting Herron v. Tribune Publ'g Co., 108 Wn.2d 162, 170, 736 P.2d 249 (1987)).

Here, the record is devoid of direct evidence that the April 18, 2013 shipment of grain contained salmonella. All three grain samples tested negative for salmonella.[6] And Dr. Sathre admits that he did not do anything to rule out other sources of salmonella, such as testing the green chop. In addition, White River delivered grain to five other local dairies during the same time period as the Kruse incident, yet none of those

---

[4] At his deposition, Dr. Sathre explained: "Well, the buckets of grain that they provided me with to take the samples from, I don't know – that's me not knowing. Now, they felt that it would have been grain from that point in time, but I don't know that that grain was collected on the days they thought it was." CP at 137.

[5] We also agree with the trial court that summary judgment was properly denied on the issue of whether the cows suffered from salmonella poisoning. Dr. Sathre's testimony on that issue was sufficient to create an issue of material fact.

[6] This does not conclusively prove that the grain was salmonella free. As Kruse points out, there are several reasons why the grain consumed by the milk cows might have been contaminated even though the grain samples from the bucket in the calf barn tested negative. But it is Kruse's burden to set forth specific facts which disclose the existence of a genuine issue as to a material fact about whether the grain was actually contaminated with salmonella. Even viewed in the light most favorable to Kruse, the test results do not help Kruse meet this burden.

dairies reported illness among their herds following consumption of the grain, and all continued to order from White River.

Dr. Sathre's opinion is based on the assumption that it is possible to determine the source of contamination based on what the animals ate. He reasoned that grain was most likely the culprit because the milk cows ate green chop with grain and got sick, whereas the bulls and dry cows ate green chop without grain and did not get sick. If the milk cows were the only animals to eat grain, this deduction would make sense. But there is evidence that the calves also ate grain, yet did not become sick. Dr. Sathre attempts to explain this inconsistency by positing that the calves might not have eaten any of the grain they were given that day, or they might not have eaten enough to become ill, or they might have only eaten a portion of grain that was not contaminated. These explanations, while not implausible, are speculative and not based on evidence in the record. "'Presumptions may not be pyramided upon presumptions, nor inference upon inference.'" Davidson v. Municipality of Metropolitan Seattle, 43 Wn. App. 569, 575, 719 P.2d 569 (1986) (quoting Prentice Packing & Storage Co. v. United Pac. Ins. Co., 5 Wn.2d 144, 164, 106 P.2d 314 (1940)).

Dr. Sathre opined that the evidence was sufficient to determine that the milk cows became ill from contaminated grain, but his conclusion required him to speculate as to how the calves avoided the same fate. In contrast, White River's expert, Dr. Lane, opined that the evidence was insufficient to determine the source of contamination. "When there could be more than one cause of injury, the testimony, whether direct or circumstantial, must reasonably exclude every hypothesis other than the one relied on."

Conrad ex rel. Conrad v. Alderwood Manor, 119 Wn. App. 275, 287, 78 P.3d 177 (2003).

Kruse cites Xiao Ping Chen v. City of Seattle, 153 Wn. App. 890, 910, 223 P.3d 1230 (2009) for the proposition that an expert opinion on an ultimate issue of fact is sufficient to defeat summary judgment. The Chen court held that the trial court erred in dismissing the plaintiff's case on summary judgment, where she produced the opinions of three experts, all of whom concluded based on ample facts in evidence that the crosswalk presented a dangerous condition. Id. at 910-11. Here, in contrast, Kruse's expert opinion was speculative and not supported by evidence in the record. The court was not required to accept it at face value.

The trial court did not improperly weigh the evidence or assess its credibility. We affirm summary judgment dismissal of Kruse's claim, and remand to the trial court for further proceedings on White River's counterclaims.[7]

Affirmed and remanded.

_Spearman, J._

WE CONCUR:

_Leach, J._                    _Cox, J._

---

[7] We reject White River's claim that the trial court abused its discretion when it considered the declaration of Dr. John Maas as part of Kruse's motion for reconsideration. "Generally, nothing in CR 59 prohibits the submission of new or additional materials on reconsideration." Martini v. Post, 178 Wn. App. 153, 162, 313 P.3d 473 (2013). "In the context of summary judgment, unlike in a trial, there is no prejudice if the court considers additional facts on reconsideration." Chen v. State, 86 Wn. App 183, 192, 937 P.2d 612 (1997) (citing Applied Indus. Materials Corp. v. Melton, 74 Wn. App. 73, 77, 872 P.2d 87 (1994).