THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF EDMONDS, a municipality; DAVE EARLING, Mayor of the City of Edmonds, in his official capacity; EDMONDS POLICE DEPARTMENT, a department of the City of Edmonds; and AL COMPAAN, Chief of Police, in his official capacity, | ) ) ) ) ) ) ) ) ) | No. 80755-2-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |
|           Appellants, | ) ) | |
|       v. | ) ) | |
| BRETT BASS, an individual; SWAN SEABERG, an individual; and CURTIS McCULLOUGH, an individual, | ) ) ) ) | |
|           Respondents. | ) ) ) | |

ANDRUS, A.C.J. — Three individual gun owners (the Gun Owners) challenge an Edmonds ordinance making it a civil infraction to store unlocked any firearm and to allow access to such a firearm by children or others not permitted by law to possess it. They contend the ordinance is a firearm regulation preempted by state law. We conclude the Gun Owners have standing to raise their pre-enforcement challenge and hold that the ordinance is, regardless of its arguable benefits to public safety, preempted by RCW 9.41.290.

FACTUAL BACKGROUND

In 2018, the Edmonds City Council enacted Ordinance Number 4120, now codified as Edmonds City Code (ECC) 5.26.010-070 (the Ordinance). The Ordinance states in part:

> It shall be a civil infraction for any person to store or keep any firearm in any premises unless such weapon is secured by a locking device, properly engaged so as to render such weapon inaccessible or unusable to any person other than the owner or other lawfully authorized user. Notwithstanding the foregoing, for purposes of this section, such weapon shall be deemed lawfully stored or lawfully kept if carried by or under the control of the owner or other lawfully authorized user.

EDMONDS CITY CODE 5.26.020. It further provides:

> It shall be a civil infraction if any person knows or reasonably should know that a minor, an at-risk person, or a prohibited person is likely to gain access to a firearm belonging to or under the control of that person, and a minor, an at-risk person, or a prohibited person obtains the firearm.

EDMONDS CITY CODE 5.26.030. The Ordinance also contains a penalty schedule, subjecting violators of ECC 5.26.020 and .030 to fines ranging from $500 to $10,000. EDMONDS CITY CODE 5.26.040.

Also in 2018, Washington voters passed Initiative 1639, which makes it a crime to store or leave a firearm "in a location where the person knows, or reasonably should know, that a prohibited person may gain access to the firearm, . . . a prohibited person obtains access and possession of the firearm" and subsequently misuses that firearm.

Soon after the Edmonds City Council enacted the Ordinance, two gun-owning residents of Edmonds brought this suit under the Uniform Declaratory Judgment Act (UDJA) against the City of Edmonds, its Mayor, the Edmonds Police

Department, and its Chief of Police (collectively referred to as "the City"). The complaint alleged that RCW 9.41.290 preempts the Ordinance and sought declaratory and injunctive relief.

RCW 9.41.290 states in its entirety:

> The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter. Such local ordinances shall have the same penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

The City moved to dismiss this challenge under CR 12(b)(1), arguing the plaintiffs lacked standing to challenge the Ordinance because none alleged an intent to violate its terms.[1] At the Gun Owners' request, the trial court deferred ruling on the motion to dismiss to allow the Gun Owners to amend their complaint or to submit declarations to support standing and permitted the parties to submit additional briefing thereafter. The Gun Owners filed an amended complaint, in which they named a third individual plaintiff, also a resident of Edmonds, and alleged more facts about the Gun Owners' firearms storage practices.

---

[1] As this court explained when faced with a nearly identical issue in Alim v. City of Seattle, 14 Wn. App. 2d 838, 474 P.3d 589, 595-96 (2020), "justiciability under the UDJA is not a question of subject matter jurisdiction" and CR 12(b)(1) is the incorrect rule under which to bring a challenge to a case's justiciability. We therefore review the trial court's standing determination as an order to dismiss under CR 12(b)(6).

In this amended complaint, Bass alleged that, although he stores several of his firearms in a gun safe, he keeps one unsecured and unlocked in his home for easy access in the event of a home invasion. He alleged that he desires to continue doing so and fears enforcement of the Ordinance against him. Seaberg alleged that, while he has a gun safe, he stores several long guns throughout his home in a manner that violates the Ordinance. He also alleged fear of enforcement of the Ordinance. Lastly, McCullough alleged that he keeps at least three firearms unlocked and unsecured in his home, where he resides with his wife and two minor children.

After receiving additional briefing, the trial court concluded that the Gun Owners had standing to challenge ECC 5.26.020, the storage provision of the Ordinance, but not .030, the unauthorized access provision. But it also concluded that "as Plaintiffs have standing to raise preemption to at least one portion of the ordinance and such challenge is ripe, it is further ORDERED that defendants' Motion to Dismiss is denied."

The Gun Owners moved for summary judgment, arguing that RCW 9.41.290 preempted both ECC 5.26.020 and .030. They each submitted declarations in which they testified that they store their firearms, unlocked, in their homes, that they do not intend to stop storing their firearms in that manner, and that they feared enforcement of the ordinance because they often left firearms unsecured and ready for self-defense even when no authorized user was in the same room.

Once again, the City argued the Gun Owners lacked standing to challenge the unauthorized access provision of the ordinance, ECC 5.26.030. The City cited

deposition testimony in which McCullough testified he stored his guns in a locked gun safe in compliance with the Edmonds ordinance. Bass similarly stores his firearms in a gun safe but removes a rifle when he comes home in the evening and places it next to his bed stand overnight. Bass confirmed he did not want children to access his firearms and does not leave them in a place where it is likely children would access them. Seaberg testified he stores long guns in concealed places, unsecured, in his home at all times. He too stated he does not think it is likely children could access his guns if they came to his home. He does not leave his gun where he thinks it is likely a person prohibited from owning a firearm could gain access to it.

The trial court granted the Gun Owners' motion for summary judgment in part, concluding that RCW 9.41.290 and I-1639 preempt ECC 5.26.020, but it affirmed its earlier ruling that the Gun Owners lack standing to challenge ECC 5.26.030.[2] It permanently enjoined Edmonds from enforcing ECC 5.26.020.

The City appeals the summary judgment order invalidating ECC 5.26.020 and the Gun Owners cross appeal the dismissal of their challenge to ECC 5.26.030 on standing grounds.

---

[2] The parties disagree whether the standing decision should be reviewed under CR 12(b)(6) or CR 56. The court stated that "as to the summary judgment motion on Edmonds Ordinance 5.26.030, I make no summary judgment ruling. I continue to indicate that my prior ruling remains in effect that . . . the plaintiffs have been determined to have no standing to raise that issue." Therefore, with regard to the Gun Owners' standing to challenge ECC 5.26.030, we review the trial court's order under the standard of review applicable to CR 12(b)(6).

ANALYSIS

A. Standing

The Gun Owners argue the trial court erred in concluding that they lacked standing to challenge ECC 5.26.030, the unauthorized access provision. We agree. The Gun Owners have standing to challenge both ECC 5.26.020 and .030. Even if the Gun Owners have no intention of violating ECC 5.26.030, whether that provision is preempted by state law is an issue of public importance sufficient to confer standing.

The UDJA provides that "[a] person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the statute, municipal ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020.

A party initiating a UDJA action must establish the existence of a justiciable controversy, including standing. Diversified Indust. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973). A party initiating a pre-enforcement challenge to an ordinance must show interests that are "direct and substantial," rather than potential, theoretical, abstract, or academic. To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001). "The kernel of the standing doctrine is that one who is not adversely affected by a statute may not question its validity." Walker v. Munro, 124 Wn.2d 402, 419, 879 P.2d 920 (1994). A party must demonstrate that they have suffered or will suffer an "injury in fact." Lakehaven Water and Sewer Dist. v. City of Federal Way, 195 Wn.2d 742, 769, 466 P.3d 213 (2020).

The City argues the Gun Owners cannot advance a pre-enforcement challenge to the unauthorized access ordinance, ECC 5.26.030, because they do not intend to ever violate that ordinance and thus have not suffered any injury in fact.  But in Alim v. City of Seattle, 14 Wn. App. 2d 838, 852, 474 P.3d 589 (2020), this court recently held that "the test under the UDJA is not whether a party intends to violate the law being challenged but merely whether their rights are adversely affected by it."  The Gun Owners testified that they have an interest in keeping their firearms unsecured in the presence of unauthorized users, and they will have to deviate from their storage practices to avoid violating both provisions of the ordinance.  This evidence suffices under Alim.

Moreover, our Supreme Court has recognized an exception to Diversified's standing test when a party raises an issue of "broad overriding public import." Walker v. Munro, 124 Wn.2d at 432; Lewis County v. State, 178 Wn. App. 431, 440 (1994); Diversified, 82 Wn.2d at 814-815.  Whether an issue is one of major public importance depends on the extent to which public interest would be enhanced by reviewing the case.  Snohomish County v. Anderson, 124 Wn.2d 834, 841, 881 P.2d 240 (1994) (emphasis omitted).  We conclude this appeal presents an issue of significant public interest and considering the challenge to the storage and the unauthorized access provisions in a single pre-enforcement challenge advances the public interest.[3]

---

[3] The City relies on Lewis County to argue that we should review the trial court's decision not to invoke the "broad overriding public import" exception to Diversified under an abuse of discretion standard.  But the case on which Lewis County relies applied a de novo standard of review to the question of whether an issue is one of broad overriding public import.  See Nollette v. Christianson, 115 Wn.2d 594, 600, 800 P.2d 359 (1990).  Division One has previously held that justiciability is a question of law to be reviewed de novo.  American Traffic Solutions, Inc. v. City of Bellingham, 163

We reach this conclusion for two reasons. First, whether a municipality has the authority to enact gun regulations affects every gun owner and every municipality in the state. Edmonds is not the only municipality to enact these storage regulations, as is evident from this court's decision in Alim, a case addressing an identical ordinance passed in Seattle. Firearm storage in particular became a matter of statewide importance as an initiative directly relating to the issue was on the statewide ballot, passed, and is now codified in RCW 9.41.360.

Second, whether RCW 9.41.290 preempts these municipal ordinances is a question of law that requires no further factual development. The preemption analysis is the same whether we evaluate only ECC 5.26.020 or evaluate both provisions at the same time. A conclusion that the state statute preempts ECC 5.26.020 necessarily means that it also preempts ECC 5.26.030. We can see no basis for concluding one provision of the ordinance is preempted while the other is not. Either the entire ordinance falls within the scope of the preempted "field of firearm regulations" or it does not. There is no reason to delay an authoritative determination on the preemption of ECC 5.26.030 here.

For these reasons, we conclude that the public would benefit greatly by decision on the validity of both ECC 5.26.020 and 5.26.030 and we conclude the Gun Owners have standing on that basis.

B. Preemption

The City argues that the trial court erred in holding that RCW 9.41.290 preempts its gun storage regulations because (1) RCW 9.41.290 is ambiguous as

---

Wn. App. 427, 432, 260 P.3d 245 (2011). We therefore review standing under both the Diversified test and the alternative "broad public import" test de novo.

to its application to ordinances which regulate the storage of firearms and (2) this ambiguity must be resolved in favor of the validity of the Ordinance. We disagree and conclude that the legislature's express preemption of "the entire field of firearms regulation" is unambiguous and necessarily extends to regulations of the storage of firearms.

Appellate courts review an order granting summary judgment de novo and perform the same inquiry as the trial court. Borton & Sons, Inc. v. Burbank Properties, LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). Statutory interpretation is a matter of law that we review de novo. Jametsky v. Olsen, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014).

Municipal ordinances are presumed to be valid and grants of municipal power are to be liberally construed. City of Bothell v. Gutschmidt, 78 Wn. App. 654, 659–60, 898 P.2d 864 (1995). Similarly, the person challenging an ordinance bears the burden of proving that the ordinance is unconstitutional. Id. at 660. Nevertheless, an ordinance will be found to be invalid if a general statute preempts city regulation of the subject. Brown v. City of Yakima, 116 Wn.2d 556, 559, 807 P.2d 353 (1991). When the legislature has expressly stated its intent to preempt the field, a city may not enact any ordinances affecting the given field. Id. A state statute will be deemed to preempt a city ordinance when there is an express legislative intent to occupy the entire field. Watson v. City of Seattle, 189 Wn.2d 149, 171, 401 P.3d 1 (2017).

Our legislature expressed its intent to "fully occup[y] and preempt[] the entire field of firearms regulation." RCW 9.41.290. The City argues that, notwithstanding this declaration of intent, the legislature did not include regulations

on the storage of firearms within this preempted field. This argument, however, conflicts with the plain language of RCW 9.41.290.

The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. Jametsky v. Olsen, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). To determine legislative intent, we first look to the plain language of the statute. Id. If a statute is unambiguous, Washington courts apply the statute's plain meaning as an expression of legislative intent without considering other sources of such intent. Id. at 762. We conclude RCW 9.41.290 is unambiguous in the expression of intent on the breadth of the preempted field.

The City first argues the phrase "entire field of firearms regulation" is ambiguous because it does not establish the field's boundaries. The legislature described the field as "including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms." RCW 9.41.290. The City contends this list is exclusive and "storage" regulations are not preempted because the legislature did not include storage in this list.

But our Supreme Court generally recognizes that a statute that uses the term "including" is one of enlargement, not restriction. Queets Band of Indians v. State, 102 Wn.2d 1, 4, 682 P.2d 909 (1984). "[T]he word *include* does not ordinarily introduce an exhaustive list, while *comprise* . . . ordinarily does." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 132 (2012). The legislature's use of the word "including" plainly indicates a list that is illustrative and not exhaustive. The absence of the word "storage" from the list in RCW 9.41.290 does not indicate an intent to allow cities to regulate this aspect of firearm ownership.

This conclusion is further supported by the legislature's sweeping language that the state "fully occupies" "the entire field" of firearms regulation "within the boundaries of the state." RCW 9.41.290. The City's offered interpretation necessitates a conclusion that the enumerated nine categories of regulation — "the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms" — is the "entire field of firearms regulations." But such an interpretation would render the inclusion of the word "including" and the list surplusage. A legislative body is presumed not to have used superfluous words. Applied Indus. Materials Corp. v. Melton, 74 Wn. App. 73, 79, 872 P.2d 87 (1994). See also Scalia & Garner at 174 (under the surplusage canon, every word and every provision is to be given effect).

The City argues that the doctrine of *ejusdem generis* should apply to render the statutory list exhaustive, rather than illustrative. Under this rule, specific words modify and restrict the meaning of general words when they occur in a sequence. State v. Flores, 164 Wn.2d 1, 13, 186 P.3d 1038 (2008). But State v. Larson, 184 Wn.2d 843, 849, 365 P.3d 740 (2015), a case on which the City relies for this argument, actually supports a contrary result. In Larson, the Supreme Court held that a criminal statute defining retail theft, former RCW 9A.56.360(1)(b), that included the phrase "including, but not limited to lined bags or tag removers" was intended to provide illustrative examples of devices designed to overcome security systems rather than an exhaustive list. Id. It did, however, indicate that under the rule of *ejusdem generis*, the "including" clause expressed a legislative intent to limit the types of devices covered by that statute to devices similar to those items explicitly identified. Id.

If we apply the doctrine of *ejusdem generis* to the illustrative examples of the firearm regulations preempted under RCW 9.41.290, the City's argument still fails because the storage of firearms is similar to and necessarily falls within the concept of firearm "possession." The City argues the word "possession" in RCW 9.41.290 should be interpreted to mean actual possession only and to exclude the concept of constructive possession. "Possession" is not defined in RCW 9.41.290. Where the legislature has not defined a term, we may look to dictionary definitions, the statute's context, and related statutes to determine the legislative understanding of a term. Matter of Detention of J.N., 200 Wn. App. 279, 286, 402 P.3d 380 (2017). The dictionary defines "possession" as "the act or condition of having in or taking into one's control or holding at one's disposal." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1770 (2002). Thus, the common sense understanding of "possession" includes the concept of physically holding a firearm in one's hands as well as having that firearm under one's control. It seems without question that a gun owner must possess a firearm in order to store it inside his home.

Moreover, under RCW 9.41.040, the unlawful possession of a firearm statute, a person may be guilty of this crime if they have the firearm "in his or her possession," or "in his or her control." "Possession" of a firearm under this related statute may be actual or constructive. State v. Chouinard, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). The City's argument thus conflicts with both the dictionary definition of "possession," as well as related statutes in which the term is defined. We therefore conclude RCW 9.41.290 preempts ECC 5.26.020.

We reach the similar conclusion as to ECC 5.26.030. That provision of the ordinance makes it a civil infraction when "any person knows or reasonably should know that a minor, an at-risk person, or a prohibited person is likely to gain access to a firearm belonging to or under the control of that person, and a minor, an at-risk person, or a prohibited person obtains the firearm." This provision attempts to regulate both the possession and the transfer of firearms to individuals who by law are prohibited from possessing them.

The prior cases discussing the scope of preemption under RCW 9.41.290 are all distinguishable. In Watson, the Supreme Court concluded that RCW 9.41.290 did not preempt a Seattle ordinance imposing a tax on firearms and ammunition sold within the city limits. But the basis for its holding was that the ordinance was a tax and not a "regulation" at all. Watson, 189 Wn.2d at 172. The court rejected the challengers' preemption argument because RCW 9.41.290 only preempted "regulations," and not taxation. Id. In this case, the City does not argue, as the City of Seattle in Watson, that the ordinance is not a firearm regulation.

In Cherry v. Municipality of Metropolitan Seattle, 116 Wn. 2d 794, 795, 808 P.2d 746 (1991), the Supreme Court ruled that RCW 9.41.290 did not preempt a Seattle Metro policy prohibiting its employees from possessing concealed weapons while on duty or on Metro property. The court concluded that "RCW 9.41.290 is intended to preempt regulatory city, town or county firearms laws and ordinances, but does not address internal employment rules limiting on-duty possession of firearms by public employees in the workplace." Id. at 798. Again, this case differs from Cherry because the City concedes ECC 5.26.020 is a regulation. It certainly is not a workplace policy.

- 13 -

In <u>Pacific Northwest Shooting Park Ass'n v. City of Sequim</u>, 158 Wn.2d 342, 144 P.3d 276 (2006), a shooting association challenged conditions the city imposed when it issued a permit to use the city convention center for a gun show. The permit provided that only dealers could sell handguns and only to state residents, only dealers could purchase firearms from unlicensed individuals, and unlicensed dealers could not sell firearms at all. <u>Id.</u> at 347. The association contended the permit conditions were impermissible under RCW 9.41.290.

The Supreme Court rejected that argument, holding that RCW 9.41.300(2)(b)(ii) explicitly permitted cities to restrict the "possession" of firearms in any convention center and the permit conditions fell within the scope of that statutory carve-out. <u>Id.</u> at 355. Because one necessarily had to "possess" a firearm to show and sell it, it followed that the city had the authority to regulate those sales under RCW 9.41.300. <u>Id.</u> It alternatively held that even if not explicitly permitted under that statute, the permit conditions were analogous to workplace policies imposed by an employer, and not regulations of general application, and thus fell outside the scope of RCW 9.41.290's preemption. <u>Id.</u> at 356-57. "<u>Cherry</u> supports the general proposition that when a municipality acts in a capacity that is comparable to that of a private party, the preemption clause does not apply." <u>Id.</u>

Neither of the holdings of <u>Pacific Northwest</u> applies here. The City does not contend its ordinance is permitted under the carve-out of RCW 9.41.300(2) and its ordinances are regulations of general application and not action taken by the city in its capacity as either a landowner or an employer.

Finally, in <u>Kitsap County v. Kitsap Rifle & Revolver Club</u>, 1 Wn. App. 2d 393, 405 P.3d 1026 (2017), Division Two of this court held that a Kitsap County

- 14 -

ordinance requiring shooting ranges to obtain operating permits was not preempted by RCW 9.41.290. Id. at 403. The Kitsap Rifle & Revolver Club argued the permit requirement was expressly preempted because it sought to regulate the discharge of firearms. Id. at 406. The court rejected the argument and concluded the ordinance was not a "firearm regulation" within the scope of RCW 9.41.290. It reached this conclusion because the legislature did not make a reference to the regulation of shooting facilities in RCW 9.41.290, the county's permit requirement neither prohibited nor regulated the discharge of firearms by gun owners, and regulating shooting ranges fell within the statutory authorization of police and sanitary regulations not in conflict with state law under RCW 36.32.120(7). Id.

The court alternatively held that even if the permit requirement were a "firearm regulation," RCW 9.41.290 explicitly permitted local governments to enact laws restricting the discharge of firearms where "there is a reasonable likelihood that humans, domestic animals, and property will be jeopardized." RCW 9.41.300(2)(a). It concluded the county shooting range permit requirement fell within the scope of this exception. Id. at 412.

Kitsap County is distinguishable because the local ordinances at issue are so different. The Edmond Ordinance, unlike Kitsap County's shooting range permit requirement, directly regulates the manner in which gun owners possess, store, and allow others to access their firearms. It is not regulating a business's activities, like the county ordinance does. And the City does not contend here that its Ordinance is an exercise of police power under RCW 36.32.120(7). Additionally, unlike Kitsap County, the City does not argue that any statutory exception in RCW

9.41.300 applies explicitly authorizing the regulation.  The Ordinance is therefore a "firearm regulation" within the meaning of RCW 9.41.290.

We therefore conclude that RCW 9.41.290 unambiguously preempts both ECC 5.26.020 and ECC 5.23.030.

<u>CONCLUSION</u>

Although the trial court erred in dismissing the Gun Owners' challenge to ECC 5.26.030 on standing grounds, we affirm the trial court's determination that RCW 9.41.290 unambiguously preempts ECC 5.26.020 and further conclude that ECC 5.26.030 is also preempted.

Affirmed in part, reversed in part.

_Andrus, A.C.J._

WE CONCUR: