THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| OMAR ABDUL ALIM, an individual; MICHAEL THYNG, an individual; THE SECOND AMENDMENT FOUNDATION, INC., a Washington non-profit corporation; and NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., a New York non-profit association, | ) ) ) ) ) ) ) ) | No. 79350-1-I DIVISION ONE PUBLISHED OPINION |
| Appellants, | ) ) | |
| v. | ) ) | |
| CITY OF SEATTLE, a municipality, JENNY DURKAN, Mayor of the City of Seattle, in her official capacity; SEATTLE POLICE DEPARTMENT, a department of the City of Seattle; and CARMEN BEST, Chief of Police, in her official capacity, | ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

ANDRUS, A.C.J. — Two gun owners and two organizations concerned with firearms regulation challenge a Seattle municipal ordinance regulating the storage of firearms, contending it is preempted by state law. The superior court granted Seattle's CR 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, finding no justiciable controversy. We conclude that justiciability defects do not remove a superior court's subject matter jurisdiction and that the challengers have

plausibly alleged a justiciable controversy under the appropriate CR 12(b)(6) standard. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Appellants Omar Abdul Alim, Michael Thyng, the National Rifle Association (NRA), and Second Amendment Foundation (SAF) brought this suit against the City of Seattle[1] under the Uniform Declaratory Judgment Act (UDJA), challenging the legality of Seattle Ordinance 12560 (the ordinance), adopted as Seattle Municipal Code (SMC) § 10.79.020-.060. The challengers claim that the ordinance, prohibiting the unsecured or uncontrolled storage of firearms, violates RCW 9.41.290, which preempts "the entire field of firearms regulation within the boundaries of the state." The ordinance provides in pertinent part:

> It shall be a civil infraction for any person to store or keep any firearm in any premises unless such weapon is secured in a locked container, properly engaged so as to render such weapon inaccessible or unusable to any person other than the owner or other lawfully authorized user. Notwithstanding the foregoing, for purposes of this Section 10.79.020, such weapon shall be deemed lawfully stored or lawfully kept if carried by or under the control of the owner or other lawfully authorized user.

SEATTLE MUNICIPAL CODE 10.79.020. The ordinance also penalizes violations:

> It shall be a civil infraction if any person knows or reasonably should know that a minor, an at-risk person, or a prohibited person is likely to gain access to a firearm belonging to or under the control of that person, and a minor, an at-risk person, or a prohibited person obtains the firearm.

---

[1] We refer to the plaintiffs collectively as "the challengers." The complaint named as defendants the City of Seattle, Mayor Jenny Durkan, the Seattle Police Department, and former Chief of Police, Carmen Best. We refer to all of the defendants as "the City."

SEATTLE MUNICIPAL CODE 10.79.030. SMC 10.79.040 sets a minimum fine of $500 or community service if no unauthorized person accessed the gun, an intermediate fine of $1,000 for a violation if an unauthorized person gains access to the firearm, and a maximum fine of $10,000 if the unauthorized person uses the firearm to injure or cause a death or uses it in connection with a crime. Any person fined under the ordinance may challenge it in municipal court and appeal an adverse ruling to superior court. SEATTLE MUNICIPAL CODE 10.79.060.

RCW 9.41.290, the state statute on which the challengers base their complaint, provides:

> The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300,[2] and are consistent with this chapter.

The City moved to dismiss the complaint under CR 12(b)(1) for lack of subject matter jurisdiction, arguing that the challengers failed to allege facts sufficient to demonstrate a justiciable controversy. The challengers argued that the lack of a justiciable controversy does not implicate the superior court's subject matter jurisdiction and, alternatively, they had adequately alleged a justiciable controversy. The challengers also requested leave to amend their complaint to cure any pleading deficiencies identified by the City.

---

[2] RCW 9.41.300 permits cities and other municipalities to enact ordinances restricting the discharge of firearms in certain locations and restricting the possession of firearms in municipally owned stadiums or convention centers.

The trial court reasoned that, because the ordinance allowed Alim and Thyng to keep their firearms unlocked as long as the firearms remained in their possession or under their control and neither individual gun owner had alleged an intent to violate this provision of the ordinance, the challengers lacked standing to challenge the ordinance. The trial court concluded that without a justiciable controversy, it lacked subject matter jurisdiction and granted the 12(b)(1) motion to dismiss. Because the challengers proposed no curative amendments to the complaint, the trial court dismissed the complaint with prejudice and denied their request for leave to amend the complaint.

The challengers moved for reconsideration under CR 59(a)(8) (error of law) and attached a proposed amended complaint to the motion. The proposed amended complaint specifically alleges that Alim stores his firearms unlocked in his house in proximity to his minor children and while no lawfully authorized users are home. The City opposed reconsideration, arguing the challengers failed to comply with CR 15 in moving to amend the complaint and the amendment was still futile because the revised allegations also failed to establish standing. The trial court denied the motion for reconsideration.

The challengers appeal the order granting the City's CR 12(b)(1) motion to dismiss.[3] Because the trial court erred in concluding that justiciability under the UDJA is jurisdictional and the challengers have adequately pleaded a justiciable controversy, we reverse.

---

[3] The challengers also assign error to the denial of their request for leave to amend the complaint, and the order denying their motion for reconsideration. Because we reverse the trial court's order dismissing this action, we do not reach these issues and leave it to the parties and the trial court to address any properly noted motion to amend the complaint.

- 4 -

ANALYSIS

The challengers maintain the trial court erred in dismissing their complaint for lack of subject matter jurisdiction. We agree.

1.  Subject Matter Jurisdiction

We review de novo an order dismissing a case for lack of subject matter jurisdiction under CR 12(b)(1). Wright v. Colville Tribal Enter. Corp., 159 Wn.2d 108, 111, 147 P.3d 1275 (2006). Subject matter jurisdiction refers to a court's ability to entertain a certain type of case. In re Marriage of Buecking, 179 Wn.2d 438, 448, 316 P.3d 999 (2013). A superior court has subject matter jurisdiction "where it has authority to adjudicate the type of controversy involved in the action." Boudreaux v. Weyerhaeuser, 10 Wn. App. 2d 289, 295, 448 P.3d 121 (2019) (quoting In re Marriage of McDermott, 175 Wn. App. 467, 480-81, 307 P.3d 717 (2013)). "If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction." ZDI Gaming Inc. v. Wash. State Gambling Comm'n, 173 Wn. 2d 608, 617-18, 268 P.3d 929 (2012) (citations omitted).

The Washington Constitution describes the original subject matter jurisdiction of our superior courts:

> Superior courts and district courts have concurrent jurisdiction in cases in equity. The superior court shall have original jurisdiction in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible

entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for.  <u>The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court</u> . . . .

CONST. art. IV, § 6 (emphasis added).  This provision sets out enumerated subject matter jurisdiction (i.e., jurisdiction in enumerated types of cases) and residual subject matter jurisdiction (all proceedings not vested exclusively in another court). <u>State v. Posey</u>, 174 Wn.2d 131, 135-36, 272 P.3d 840 (2012).  The legislature thus cannot restrict the enumerated jurisdiction of a superior court, but may restrict the residual jurisdiction of a superior court by choosing to vest exclusive jurisdiction in an alternative forum.  <u>Id.</u> at 136.

The challengers brought this action under the UDJA, which provides:

A person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020.  Although requests for declaratory relief are not enumerated cases in article IV, section 6, they fall within that provision's residual jurisdiction clause because the legislature chose the forum in which such persons may bring UDJA actions:

Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed.

RCW 7.24.010.  Our superior courts are these courts of record, as recognized by the legislature in RCW 2.08.010.  No other court has been given exclusive

jurisdiction over UDJA challenges. As a result, by virtue of our constitution, superior courts have residual subject matter jurisdiction over any UDJA lawsuit.

The City moved to dismiss the challengers' complaint, arguing the challengers lacked standing and their pre-enforcement challenge was not ripe. The UDJA requires a justiciable controversy, meaning (1) one presenting an actual, present, and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) involving interests that are direct and substantial, rather than potential, theoretical, abstract, or academic, and (4) of which a judicial determination will be final and conclusive. Diversified Indust. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973). The four-prong Diversified Industries test encompasses the concepts of ripeness (the first prong) and standing (the third prong). Branson v. Port of Seattle, 152 Wn.2d 862, 877, 101 P.3d 67 (2004) (doctrine of standing inherent in justiciability determination); Amalg. Transit Union Local 587 v. State, 142 Wn.2d 183, 203, 11 P.3d 762 (2000) ("under the Uniform Declaratory Judgments Act, the requirement of standing tends to overlap justiciability requirements"); To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001) (standing and ripeness are inherent in four Diversified criteria of justiciability). But, contrary to the trial court's ruling below and the City's contention on appeal, a party's failure to establish a justiciable dispute under Diversified Industries cannot divest a superior court of subject matter jurisdiction. Only the legislature can do so, and it can do so only by

vesting exclusive subject matter jurisdiction in another forum. That has not occurred here.

We recognize that the Supreme Court has, in the past, framed standing and ripeness under the UDJA in jurisdictional terms. See High Tide Seafoods v. State, 106 Wn. 2d 695, 702, 725 P.2d 411 (1986) ("[i]f a plaintiff lacks standing to bring a suit, courts lack jurisdiction to consider it"); Diversified Indust., 82 Wn.2d at 815 ("before the jurisdiction of a court may be invoked under the [UDJA], there must be a justiciable controversy"); Wash. Educ. Ass'n v. Wash. State Pub. Disclosure Comm'n, 150 Wn. 2d 612, 622, 80 P.3d 608 (2003) ("[w]e steadfastly adhere to the virtually universal rule that there must be a justiciable controversy before the jurisdiction of a court may be invoked").

But more recent Supreme Court jurisprudence acknowledges its historic inconsistency in its use and its misapplication of the term "jurisdiction." In Buecking, it stated:

> Much of the confusion surrounding the concept of jurisdiction in Washington appears to stem from an evolving view of the elements of jurisdiction. Some authorities have said that jurisdiction is comprised of three elements: jurisdiction over the person, jurisdiction over the subject matter, and jurisdiction to render the particular judgment sought (sometimes called jurisdiction of the particular case).

> We have since clarified that jurisdiction is comprised of only two components: jurisdiction over the person and subject matter jurisdiction. Subject matter jurisdiction refers to a court's ability to entertain a type of case, not to its authority to enter an order in a particular case. Thus, our recent cases have narrowed the types of errors that implicate a court's subject matter jurisdiction. Under these cases, if a court can hear a particular class of case, then it has subject matter jurisdiction.

179 Wn. 2d at 447-48 (citations omitted) (emphasis added). <u>Buecking</u> not only clarified the law on subject matter jurisdiction, but cautioned us to analyze carefully any earlier pronouncements on superior court "jurisdiction." <u>See also</u> <u>Cole v. Harveyland, LLC</u>, 163 Wn. App. 199, 208, 258 P.3d 70 (2011) ("the terminology of subject matter jurisdiction continues to pop up outside its boundaries like a jurisprudential form of tansy ragwort"); <u>In re Estate of Reugh</u>, 10 Wn. App. 2d 20, 47-48, 447 P.3d 544 (2019) (rejecting "earlier injudicious pronouncements of law" mistakenly extending the concept of subject matter jurisdiction to the grant of nonintervention powers in a probate).

In the non-UDJA context, this court has previously held that standing is not an issue of subject matter jurisdiction. <u>Trinity Universal Ins. Co. of Kan. v. Ohio Cas. Ins. Co.</u>, 176 Wn. App. 185, 199, 312 P.3d 976 (2013). As we explained in <u>Trinity Universal</u>, under federal law, a plaintiff's lack of standing does deprive a federal district court of subject matter jurisdiction. <u>Id.</u> at 198. But federal courts, unlike superior courts, are courts of limited jurisdiction. <u>Kokkonen v. Guardian Life Ins.</u>, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). Article III's standing requirement is one limit on a federal court's jurisdiction. <u>Cetacean Cmty. v. Bush</u>, 386 F.3d 1169, 1174 (9th Cir. 2004) (Congress may not confer standing on a plaintiff who lacks Article III standing by statute). "By contrast, the Washington Constitution places few constraints on superior court jurisdiction." <u>Trinity Universal</u>, 176 Wn. App. at 198. And thus "a plaintiffs [sic] lack of standing is not a matter of subject matter jurisdiction." <u>Id.</u> at 199.

There is no basis for concluding that standing is not jurisdictional in some cases but is jurisdictional under the UDJA. Indeed, in To-Ro Trade Shows v. Collins, 100 Wn. App. 483, 489, 997 P.2d 960 (2000), *aff'd*, 144 Wn.2d 403, 27 P.3d 1149 (2001), Division Two of this court rejected reliance on federal cases in arguing that the plaintiff's lack of standing was jurisdictional in nature under the UDJA. In that case, a trade show promoter challenged the constitutionality of a licensing law prohibiting out-of-state recreational vehicle dealers from participating in Washington trade shows unless licensed to operate in the state. Id. at 484. Division Two acknowledged, as we did in Trinity Universal, that unlike the federal constitution, our state constitution did not limit a superior court's jurisdiction, and standing under the UDJA was not jurisdictional in nature. Id. at 489. The Supreme Court did not disturb this holding when it affirmed the dismissal of the complaint for lack of standing. 144 Wn.2d at 417-18. We thus conclude that justiciability under the UDJA is not a question of subject matter jurisdiction.

2.    Applicability of CR 12(b)(6)

Because standing and ripeness are not jurisdictional under the UDJA, the City's CR 12(b)(1) motion was the improper vehicle for seeking dismissal of the complaint. This court recently addressed an analogous situation in Boudreaux v. Weyerhaeuser, 10 Wn. App. 2d 289 at 313. In that case, Weyerhaeuser moved to dismiss, under CR 12(b)(1), claims filed by five workers who alleged they had been injured by exposure to formaldehyde in a Louisiana plant. Id. at 292. Weyerhaeuser argued its employer immunity under the Washington Industrial Insurance Act (IIA) divested any superior court of subject matter jurisdiction over

the claim. Id. This court rejected the argument, holding that employer immunity is not jurisdictional despite several Supreme Court cases framing the issue as one of subject matter jurisdiction. Id. at 298. Because jurisdiction over the injury claims is constitutionally vested in superior court by article IV, section 6, we held the legislature could not diminish that jurisdiction by statute. Id. at 308.

We further concluded that a CR 12(b)(1) motion to dismiss for lack of subject matter jurisdiction was "the improper vehicle for Weyerhaeuser's assertion of employer immunity." Id. at 313. The proper vehicle under CR 12 would have been a CR 12(b)(6) motion for failure to state a claim on which relief could be granted. Id. The trial court could have treated Weyerhaeuser's motion as a CR 12(b)(6) motion or simply denied the CR 12(b)(1) motion as failing on its merits. Id. at 314. Here, too, the trial court should have either denied the CR 12(b)(1) motion or evaluated it under the standard governing CR 12(b)(6) motions.

       a.     Standing

The City maintains that even if we evaluate its motion under CR 12(b)(6), the challengers lack standing to bring a UDJA challenge to the ordinance. We disagree.

Dismissal is warranted under CR 12(b)(6) only if the court concludes, beyond a reasonable doubt, that the plaintiff cannot prove any set of facts which would justify recovery. FutureSelect Portfolio Mgmt. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). All facts alleged in the complaint are taken as true, Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007), and "a court may consider hypothetical facts not part of the formal record in deciding

whether to dismiss a complaint pursuant to CR 12(b)(6)." Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032 (1987) (citations omitted). If a claim remains legally insufficient under proffered hypothetical facts, dismissal under CR 12(b)(6) is appropriate. FutureSelect, 180 Wn.2d at 963.

Under this standard, we assume not only the facts as alleged in the challengers' original complaint but also those it sought to allege in its proposed amended complaint. We also can assume hypothetical facts the City itself proposed during its argument before the trial court: (1) the challengers keep firearms unlocked when there are children under the age of 18 who may have access to them and intend to continue this practice; (2) when the challengers are in their homes, they leave firearms in places outside of their personal possession or their control; or (3) the challengers want to leave their firearms unlocked on their kitchen table when they leave their homes. Under this set of hypothetical facts, the challengers have sufficiently pleaded both individual and organizational representative standing.

"The kernel of the standing doctrine is that one who is not adversely affected by a statute may not question its validity." Walker v. Munro, 124 Wn.2d 402, 419, 879 P.2d 920 (1994). To establish standing under the UDJA, a party must demonstrate that: (1) the interest they seek to protect is within the zone of interests regulated by the ordinance in question, and (2) they have suffered or will suffer an "injury in fact." Lakehaven Water and Sewer Dist. v. City of Federal Way, 195 Wn.2d 742, 769, 466 P.3d 213 (2020); Nelson v. Appleway Chevrolet, Inc., 160

Wn.2d 173, 186, 157 P.3d 847 (2007); Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 802, 83 P.3d 419 (2004).

Alim and Thyng easily satisfy the zone of interest test. Their interest as individual gun owners in keeping unsecured firearms in their homes is clearly within the zone of interests regulated by the ordinance. The City does not contend otherwise.

The City argues, instead, that Alim and Thyng have not adequately pleaded injury in fact because the City has taken no enforcement action against them and they did not allege an intent to engage in conduct that violates the ordinance. The City relies on a recent Division Two case for the proposition that, absent an actual threat of enforcement, a plaintiff's standing to challenge that regulation must be based on allegations of intent to violate the regulation in the future. Forbes v. Pierce County, 5 Wn. App. 2d 423, 436, 427 P.3d 675 (2018). At issue in Forbes was the constitutionality of two county ordinances regulating erotic dance studios. Id. at 427-28. One provision allowed the county to suspend or revoke licenses for code violations, while the other provided criminal penalties for violations. Id. Plaintiffs received a notice from the county that they were in violation of the regulations and risked losing their licenses under Pierce County Code (PCC) 5.14.110, .180, .190, but the notice did not threaten them with criminal prosecution under PCC 5.14.250. Id. at 428-29. The appellate court held that to have standing to challenge the criminal provision, the plaintiffs either had to demonstrate a direct threat of prosecution or assessment of criminal penalties or a future intent to engage in conduct prohibited by the challenged ordinance. Id. at 436-37. With no

evidence to support either contention, the court held they lacked standing to challenge PCC 5.14.250. Id. at 437.

Forbes is not dispositive here for two reasons. First, the county filed a summary judgment motion, not a CR 12(b)(6) motion. Given the standard applicable to CR 12(b)(6), we must assume the challengers intend to violate the ordinance and will face civil penalties for doing so. In the complaint, Alim and Thyng allege they keep weapons unsecured in their homes and desire to continue this practice. Alim alleges that he does not own a gun safe or lock that would allow him to remain in compliance with the ordinance. The City indicated below that if Alim and Thyng alleged they leave their firearms unlocked and unattended in their houses, such allegations would be sufficient to establish intent to violate the ordinance and thus injury in fact. In the proposed amended complaint, Alim alleges he stores or keeps several firearms in closets and in other hidden locations in his home when neither he nor his wife are at home. He also alleges the firearms are not in proximity to any authorized users or secured in locked containers. Both Alim and Thyng allege the manner in which they store their firearms violates the ordinance. Finally, they allege that the ordinance will compel them to purchase gun safes or other similar equipment under threat of civil infraction. The facts alleged in the complaint along with hypothetical facts set out in the proposed amended complaint suffice to establish injury in fact under Forbes.

Second, we question whether Forbes was correctly decided under Washington law. The Forbes court relied on Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) for the proposition

that a party bringing a pre-enforcement challenge to the constitutionality of a criminal statute must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." Id. at 160. But Susan B. Anthony articulates Article III standing doctrine, not standing under our UDJA.

RCW 7.24.020 confers standing on any person "whose rights . . . are affected by a . . . municipal ordinance." Our analysis of standing under Washington law begins with the statute purporting to confer that standing. West v. Seattle Port Comm'n, 194 Wn. App. 821, 826, 380 P.3d 82 (2016). The test under the UDJA is not whether a party intends to violate the law being challenged but merely whether their rights are adversely affected by it. A party seeking a judgment that a statute or ordinance is unconstitutional must show that enforcement of the law will directly affect him. Crane Towing, Inc. v. Gorton, 89 Wn.2d 161, 172, 570 P.2d 428 (1977). "The rationale for this rule is quite simple. If a plaintiff is not directly affected by the enforcement of a statute, the declaratory judgment action becomes, in effect, an advisory opinion because of the lack of the necessary adversarial atmosphere." Id. at 172-73. One cannot simply state that the action is brought on behalf of all people of the State of Washington because that does not "produce the element of conflict necessary to elevate the decision from being merely an advisory opinion on the constitutional rights [at stake]." Id. at 173.

The challengers here make an adequate showing that their rights will be or have been adversely affected by the City ordinance. They allege they follow a

certain firearm storage practice, the ordinance requires them to alter this practice or risk being in violation of the law, and Alim would have to purchase a gun locker to come into compliance. The facts alleged show an adversarial relationship sufficient to eliminate the risk that a ruling on the merits of their preemption challenge would be an advisory opinion only. We see no basis under the UDJA to require a person to confess to a violation of an ordinance and risk exposure to significant civil infractions before being able to challenge the validity of that ordinance under state law. Alim and Thyng have sufficiently pleaded facts to establish individual standing under CR 12(b)(6).[4]

We similarly conclude the NRA and SAF have adequately alleged facts sufficient to establish representational organizational standing at the CR 12(b)(6) stage. In order to establish representational standing, the NRA and SAF must demonstrate "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 595, 192 P.3d 306 (2008). The record satisfies each of these three elements.

First, Alim alleges he is a member of the NRA and Thyng alleges he is a member of both the NRA and the SAF. We have concluded both have alleged facts sufficient to establish individual standing. Second, both the NRA and the SFA have alleged an organizational purpose germane to the regulation of firearms

_____

[4] Our justiciability analysis in no way forecloses the City's ability to later challenge the veracity of the allegations under the more demanding CR 56 standard.

- 16 -

ownership. Finally, there is nothing to indicate that the participation of individual members in the lawsuit is necessary. The NRA and the SFA have adequately established standing to challenge the ordinance.

b. Ripeness

The City argues that even if the challengers have standing to bring their UDJA action, the dispute is not ripe for a judicial resolution under Diversified Industries. We also disagree with this argument.

In determining whether a claim is ripe for review, we consider if the issues raised are primarily legal, and do not require further factual development, and if the challenged action is final. Jafar v. Webb, 177 Wn.2d 520, 525, 303 P.3d 1042 (2013). We also consider the hardship to the parties of withholding court consideration. Id.

The City contends that the challengers' claims require factual development because Alim and Thyng have not alleged behavior that would directly violate the ordinance. But that argument conflates standing and ripeness. As this court recognized in Grandmaster Sheng-Yen Lu v. King County, 110 Wn. App. 92, 108, 38 P.3d 1040 (2002), when the legal issue is whether an ordinance violates the constitution (or here a state statute), the issue is one a court is particularly qualified to decide. The issue raised here – whether the ordinance is preempted by state statute – is wholly legal in nature and there is no need for any factual development to resolve this legal dispute. It is fit for judicial determination.

The City also maintains Alim and Thyng have not alleged facts suggesting a hardship if they must wait to challenge the law until or if it is ever enforced against

them. But the Supreme Court noted in Jafar that "current hardship" is not a strict requirement for ripeness. 177 Wn.2d at 525. The challengers have adequately pleaded facts demonstrating the impact of the ordinance on their firearm handling practices. If a court does not determine the validity of the City ordinance now, Alim and Thyng will have to either change their firearm storage practices or expose themselves to liability. And the City demonstrates no hardship in having the court address the merits of the challenge now rather than in the future. For these reasons, the dispute is ripe.

## CONCLUSION

The trial court has subject matter jurisdiction over the challengers' claims and it erred in granting the City's CR 12(b)(1) motion to dismiss. Under CR 12(b)(6), the challengers have adequately pleaded facts to demonstrate their standing to bring this UDJA action and to demonstrate the controversy is now ripe for judicial review.

Reversed and remanded.

Andrus, A.C.J.

WE CONCUR:

Dwyer, J.          Appelwick, J.

- 18 -