THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Adoption of N.L.D., | No. 82528-3-I |
| RYAN A. DIXON, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| MATTHEW GOGUEN, | |
| Respondent. | |

ANDRUS, A.C.J. — Ryan Dixon appeals the trial court's order terminating his parental rights over his biological son, N.L.D. He raises several arguments concerning jurisdiction, standing, service, and the sufficiency of the trial court's findings supporting its termination order. We reject each argument and affirm.

<u>FACTS</u>

This appeal concerns the termination of the parental rights of Ryan Dixon in relation to his biological son, N.L.D., born in September 2014. The petitioner is Matthew Goguen, N.L.D.'s stepfather, who sought to adopt the child.

Goguen's wife, Jie Liang (now Goguen) is N.L.D.'s biological mother and was married to Dixon from approximately 2004 to 2015. Dixon and Liang separated in 2012 when Dixon moved to Florida, but they continued to see one another intermittently until they divorced. In December 2013, Dixon visited Liang

Citations and pin cites are based on the Westlaw online version of the cited material.

in Washington and the couple had unprotected sexual intercourse, resulting in N.L.D.'s conception.[1]

Dixon expressed displeasure towards Liang's pregnancy, stating in a January 2014 email to Liang "if this baby becomes something I have to live with, I put this on you." Dixon was in Washington for two weeks after N.L.D.'s birth, but has not seen the child since October 2014. In December 2014, Dixon sent Liang an email stating that he did not wish to be a part of Liang's or N.L.D.'s life and wrote he "won't be a dad to [N.L.D.] or in his life at all." Around the same time, he sent Liang many texts threatening Liang with violence and insulting her with racist and sexist slurs.

Liang filed for a dissolution in Pierce County Superior Court in June 2015 and the court entered a final parenting plan in which Dixon agreed to no joint decision making and no visitation with N.L.D. The court also entered a child support order requiring Dixon to pay the mandatory minimum of $50 per month. In December 2015, Dixon sent a text to Liang stating that he wanted nothing to do with her or N.L.D.

Liang became romantically involved with Goguen in 2017 and, in March 2018, Dixon sent an email to Jie offering to permit Goguen to adopt N.L.D. Liang and Goguen married in February 2019, and soon after, the couple contacted Dixon to request he relinquish his parental rights. Dixon refused.

---

[1] Because N.L.D. was born while Dixon and Liang were still married, Dixon is also presumed to be N.L.D.'s father under RCW 26.26A.115(1)(a)(i).

Dixon has never provided any financial support for N.L.D. He has had no direct contact with the child except for five facetime calls in the child's first two years.

Goguen filed this petition to terminate Dixon's parental rights in King County Superior Court in January 2020. Dixon, who appeared for but did not testify or present evidence at the trial, challenged the court's jurisdiction and Goguen's standing to bring the termination action. The court rejected these arguments and entered an order terminating the parent-child relationship in March 2021. Dixon appeals.

ANALYSIS

Dixon raises five issues on appeal. He argues (1) the trial court lacked both subject matter and personal jurisdiction to hear the petition, (2) Goguen lacked standing to bring the petition, (3) service of the petition was inadequate, (4) the trial court did not adequately address his pleadings and motions at trial, and (5) the court lacked a basis to terminate his parental rights. We reject each argument.

A. The trial court had jurisdiction

Dixon challenges both the subject matter and personal jurisdiction of the trial court. Neither argument is supported in Washington law.

Whether a court has jurisdiction is a question of law we review de novo. Lakeside Indus., Inc. v. Dep't of Revenue, 19 Wn. App. 2d 225, 229-230, 495 P.3d 257 (2021).

First, Dixon appears to conflate the issues of subject matter jurisdiction, standing, and the merits of Goguen's petition by arguing that the trial court lacked

subject matter jurisdiction due to "lack of standing by the moving party and lack of injury in-fact by any party involved in the lower court's petition," and "based on the prerequisite by the Supreme Court that an alleged parent must be found 'unfit' prior to termination of parental rights."

A court's subject matter jurisdiction is not implicated by considerations of standing or the merits of a petitioner's claim.[2] See In re Marriage of Buecking, 179 Wn.2d 438, 447-48, 316 P.3d 999 (2013) ("Subject matter jurisdiction refers to a court's ability to entertain a type of case, not to its authority to enter an order in a particular case. . . . [I]f a court can hear a particular class of case, then it has subject matter jurisdiction.")

The Washington Constitution provides: "The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." CONST. art. IV, § 6. A petition for the termination of parental rights "may be filed in the superior court of the county in which the petitioner is a resident or of the county in which the adoptee is domiciled." RCW 26.33.030. It is undisputed that Goguen and N.L.D. lived in King County at the time this petition was filed. The King County Superior Court thus had subject matter jurisdiction to hear the petition.

To the extent that Dixon challenges the trial court's personal jurisdiction, we reject that argument as well. The trial court had personal jurisdiction over Dixon via the state's long-arm statute, subjecting a person to the jurisdiction of this state's courts for any cause of action arising from, "[t]he act of sexual intercourse within

---

[2] We address Dixon's arguments concerning standing and the trial court's unfitness finding in sections B and E of this opinion, respectively.

this state with respect to which a child may have been conceived." RCW 4.28.185(1)(e). The trial court found, and Dixon does not dispute, that N.L.D. was conceived after Dixon and Liang engaged in sexual intercourse in Washington. The trial court thus had personal jurisdiction over Dixon.

B. Goguen had standing to seek a judicial termination of Dixon's parental rights

Dixon argues that Goguen lacked standing to bring his petition because "[t]here is no injury-in-fact on the record by the moving party in the lower court case," citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). But Dixon's reliance on Lujan is misplaced because that case applies the requirements for standing in federal court under article III of the U.S. Constitution, a test which does not apply to a prospective adoptive parent's standing to bring a petition to terminate parental rights in Washington. See Alim v. City of Seattle, 14 Wn. App. 2d 838, 849, 474 P.3d 589 (2020) (while a plaintiff's lack of standing deprives a federal court of subject matter jurisdiction, standing is not jurisdictional under the Washington Constitution).

Whether an individual has standing to petition for termination is instead determined solely by statute. In re Adoption of B.T., 150 Wn.2d 409, 417, 78 P.3d 634 (2003). Under RCW 26.33.100(1)(c), a petition for termination can be filed by a "prospective adoptive parent if he or she seeks to adopt the child of his or her spouse." Dixon does not dispute that Goguen is a prospective adoptive parent and is married to N.L.D.'s mother, Liang. Goguen thus had standing to bring the petition.

C. Service of the petition was adequate

Dixon next argues that service of the petition was inadequate because Goguen failed to file an affidavit to prove that Dixon could not be served in Washington. He is incorrect.

The trial court found that Dixon made himself difficult to serve. He claimed he could be served only at a particular law firm in Florida, which, it turned out, was never representing him. He refused to provide Liang a residential address. Goguen hired a private investigator to locate Dixon and effectuated legal process on Dixon in person in Ocala, Florida. The trial court concluded that Dixon was properly served under RCW 4.28.185.

RCW 4.28.185(4) states "Personal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state." The trial court concluded that Goguen fulfilled this requirement by filing a verified petition and Liang's declaration establishing that Dixon could not be served in Washington.

Dixon argues that the trial court erred in concluding that Liang's declaration is an "affidavit" within the meaning of RCW 4.28.185(4). But under RCW 5.50.030, "if a law of this state requires or permits use of a sworn declaration, an unsworn declaration meeting the requirements of this chapter has the same effect as a sworn declaration." An unsworn declaration must contain language that the statements are made "under penalty of perjury under the law of Washington," and identify the date, and location of the signature. RCW 5.50.050. Liang's declaration contained the attestation required by RCW 5.50.050 and is thus the equivalent of

a sworn affidavit by virtue of RCW 5.50.030. Liang's declaration fulfilled the affidavit requirement of RCW 4.28.185(4).

   D. The trial court adequately addressed all of Dixon's motions

Next, Dixon argues that the trial court erred by failing to rule on his "numerous jurisdictional challenges." We disagree.

We first note that this assignment of error is insufficiently briefed; Dixon does not specify which motions he believes the trial court left unaddressed, nor did he provide a verbatim report of proceedings so that this court may fully assess the trial court's oral rulings. Nevertheless, the record before us establishes that the trial court sufficiently addressed Dixon's jurisdictional challenges. The court entered extensive findings of fact to support its conclusion that the jurisdictional requirements of RCW 4.28.185(1)(e) were satisfied.

The trial court further noted that "Dixon filed over twenty motions, most or all of which were improperly noted, served, and submitted to the Court." Dixon argues that the trial court erred by failing to take into account his status as a pro se appellant "and cannot be held to the same standard as a lawyer." He is incorrect. Pro se litigants are held to the same standards as an attorney. Kelsey v. Kelsey, 179 Wn. App. 360, 368, 317 P.3d 1096, review denied, 180 Wn.2d 1017 (2014). The trial court did not err in its treatment of Dixon's motions.

E. The trial court had a factual basis for terminating Dixon's parental rights

Lastly, Dixon argues that Goguen failed to prove that Dixon is an unfit parent and the trial court lacked a factual basis for terminating his parental rights. We disagree.

RCW 26.33.120(1) provides:

[T]he parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

In re the Interests of H.J.P., 114 Wn.2d 522, 531, 789 P.2d 96 (1990), the Supreme Court of Washington held that to terminate the parental rights of a nonconsenting parent, it must find parental unfitness on the part of the nonconsenting parent. But, it further held that "parental unfitness" is established by showing that the nonconsenting parent "has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations." Id. Thus, the statutory standard meets any constitutional due process requirements. Id.

The trial court concluded that Goguen proved by clear, cogent, and convincing evidence both that Dixon had failed to perform parental duties under circumstances showing a substantial disregard for his parenting obligations, and that termination of the parent-child relationship is in the best interest of N.L.D. Where a trial court has terminated the parent-child relationship, "[a]ppellate review is limited to the determination of whether there is substantial evidence to support

- 8 -

the trial court's findings in light of the 'clear, cogent and convincing' standard." In re the Adoption of J.D., 42 Wn. App. 345, 348, 711 P.2d 368 (1985) (quoting In re Sego, 82 Wn.2d. 736, 739, 513 P.2d 831 (1973)). Under this evidentiary standard, "the ultimate fact in issue must be shown by evidence to be highly probable." In re H.J.P. at 532 (internal quotation marks omitted). "Because of the highly fact-specific nature of termination proceedings, deference to the trial court is 'particularly important.' " In re Parental Rights to K.M.M., 186 Wn.2d 466, 477, 379 P.3d 75 (2016) (quoting In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983)).

The trial court had a factual basis for terminating Dixon's parental rights. First, the trial court found that there is no connection or bond between N.L.D. and Dixon. It found that Dixon never telephoned the child, never sent him any cards or gifts for birthdays or holidays, never supported him financially, and never inquired into his well-being in any meaningful way since 2016. The trial court further found that Dixon never expressed any desire to be a father to N.L.D. or stated any intention to financially or emotionally support him. Additionally, the court found that "[Dixon] has never sought to modify the existing parenting plan to get more time with [N.L.D.] and has steadfastly refused to provide any child support whatsoever." Dixon has not challenged any of these factual findings.

Parental obligations, at a minimum, include expressing love and affection; attending to the health, education, and general well-being of the child; supplying necessary food, clothing and medical care; providing an adequate domicile; and providing social and religious guidance. In re the Interest of Pawling, 101 Wn.2d

- 9 -

392, 398, 679 P.2d 916 (1984).  The unrefuted evidence established that Dixon had a total lack of regard for any of these parental obligations.

The trial court also concluded that Goguen established by clear, convincing evidence that it was in N.L.D.'s best interest that the relationship with Dixon be terminated.  This conclusion is also supported by unchallenged factual findings that Goguen loves N.L.D., cares for him, and provides both financial and emotional support "in all the ways that a parent does."  The court found that for the past two years, N.L.D. has considered Goguen his father and calls him "Dad."  Erin McKinney, a social worker appointed to Goguen's adoption case, testified she recommended the court grant Goguen's request for adoption.

There is ample unchallenged evidence in the record to support the trial court's finding that Dixon had demonstrated an unfitness to parent N.L.D. and this finding supports the decision to terminate Dixon's parental rights under RCW 26.33.120.

Affirmed.

_Andrus, A.C.J._

WE CONCUR:

_____        _____