**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/walawreports/.

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CITY OF EDMONDS, a Washington Municipal Corporation, | No. 84712-1-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| THE EDMONDS EBB TIDE ASSOCIATION OF APARTMENT OWNERS, a Washington Nonprofit Corporation, | |
| Appellant. | |

FELDMAN, J. — Edmonds Ebb Tide Association of Apartment Owners (Ebb Tide Association) appeals a trial court's final judgment and order granting declaratory relief in favor of the City of Edmonds (the City) under the Uniform Declaratory Judgment Act (UDJA). The trial court's judgment and order declares that an access easement (the Easement) that Ebb Tide Association's predecessor-in-interest granted to the City provides sufficient real property rights to enable the City to construct a public walkway as described and specified by the City in the trial court proceedings. We reject Ebb Tide Association's arguments and affirm.

No. 84712-1-I/2

I

Ebb Tide Association is the current owner of a five-story, twenty-unit building (the Building), which was originally constructed in 1965. The Building is located on the waterfront, and members of the public have for many years trespassed over the Building's private patio rather than walking on the adjacent beach. Occupants of the Building have complained to the City, which led to conversations about how to resolve the issue. *Id*.

The City, in turn, owns the surrounding waterfront property and has developed that property by creating parks and walkways. The City has for many years wanted to build a continuous walkway along the waterfront connecting the Edmonds-to-Kingston Ferry north of the Building to a park and fishing pier south of the Building. The missing link in that walkway is on the waterfront side of the Building.

Olympic Properties purchased the Building in June 1983, renamed it the Ebb Tide, converted the units into condominiums, and created the Ebb Tide Association to comply with Washington's condominium statute. Shortly after purchasing the Building, Olympic Properties sought to eliminate public trespass across the Building's private patio. Olympic Properties and the City concluded that this could be done by creating an access easement so that the City could build a walkway that would redirect pedestrian traffic out onto the beach and away from the patio.

Signed in November of 1983, the Easement states in relevant part as follows:

That the said Grantor for and in consideration of one dollar to Grantor

2

in hand paid by said Grantee, mutual benefits accruing and other valuable, legal consideration, receipt of which is hereby acknowledged, do by these presents grant, bargain, sell, convey and confirm unto the said Grantee *a right-of-way easement for public access, use and enjoyment, together with the right to construct and maintain public improvements, facilities, utilities, and necessary appurtenances, over, through, across, and upon the following described property,* situate[d] in Snohomish County, Washington, more particularly described as follows:

> Commencing at a point on the Westerly margin of right-of-way of Burlington Northern Railroad 50.00 feet Northerly from the South line of Government Lot 2, Section 23, Township 27 North, Range 3 East W.M., as measured along said westerly margin; thence North 41°00'00" East along the Westerly margin of said right-of-way, a distance of 100.00 feet; thence North 49°00'00" West, perpendicular with said right- of-way margin, a distance of 149,61 feet to the Government meander line of the waters of Puget Sound; thence North 51°19'24" East, along said meander line, a distance of 6.91 feet to the Easterlymost corner of Parcel A, as described on Sheet 1 of the Plat of Ebb Tide, a condominium, as recorded in Volume 44 of Plats, on pages 175 through 181 inclusive, records of Snohomish County, Washington; thence North 38°37'00" West, along the Northeasterly line of said Parcel A, a distance of 60.00 feet to the True Point of Beginning; thence continuing North 38°37'00" West a distance of 10.00 feet; thence South 47°52'11" West, a distance of 99.60 feet to a point on the Southwesterly line of said Parcel A; thence South 38°37'00" East, along said Southwesterly line of said Parcel ·A, a distance of 10.00 feet; thence North 47°52'11" East, a distance of 99.60 feet to the True Point of Beginning.

> Situated in Snohomish county, Washington.

> *The Grantee, its successors, agents, or assigns, shall construct, install, or erect no structures or improvements upon or within the above described easement right of way, whereby any portion thereof extends above a horizontal plane having an elevation of 17.00 as referred to City of Edmonds Datum (Mean Lower Low Water).*

(Emphasis added.).  The Easement thus allows the City to complete its

3

continuous walkway along the Edmonds Waterfront—and thereby address the ongoing trespass complaints—so long as the improvements, facilities, utilities, and necessary appurtenances do not extend beyond the dimensions or above the elevation prescribed by the Easement.[1]

The City did not immediately begin building the proposed walkway because it lacked necessary funding to do so. Sixteen years later, in 1999, the City formally proposed building an elevated walkway across the strip of land designated in the Easement, but terminated the project because of Ebb Tide Association's sustained opposition. Seventeen years later, in 2016, the City again proposed an elevated walkway, which was similar to the 1999 proposal and was known as the "Planned Improvements." Once again, Ebb Tide Association opposed construction of the elevated walkway and argued, among other things, that the Easement does not establish sufficient real property rights to construct a walkway in accordance with the Planned Improvements.

To address the Ebb Tide Association's continued opposition, the City filed a complaint seeking a declaratory judgment that it "has the right to construct the Planned Improvements within the easement area." After a four-day bench trial, the court granted the City's request for declaratory relief. The trial court's final judgment and order states, "[t]he City has sufficient real property rights to

---

[1] The trial court record conclusively establishes that (1) the easement area ("the following described property") is a 10-foot wide and approximately 100-foot long strip of beach roughly 6-feet waterward from the patio seawall on the north end and 12-feet waterward from the patio seawall on the south end, and (2) the height restriction ("an elevation of 17.00 as referred to City of Edmonds Datum (Mean Lower Low Water)") equates to 1.84 feet above the finished first floor elevation of the Building. Neither point is disputed here.

4

No. 84712-1-I/5

construct a walkway within the easement area, the final design of which will [be]

materially consistent with the Planned Improvements . . . ."

Ebb Tide Association appeals.

II

A.      Ripeness

Ebb Tide Association's lead argument is that the trial court should have

dismissed the City's claim on ripeness grounds.  We disagree.

Under the UDJA, "[a] person interested under a deed . . . may have

determined any question of construction . . . arising under the instrument . . . and

obtain a declaration of rights, status or other legal relations thereunder."  RCW

7.24.020.  The UDJA requires a justiciable controversy, which "encompasses the

concepts of ripeness."  *Alim v. City of Seattle*, 14 Wn. App. 2d 838, 847, 474

P.3d 589 (2020).  The ripeness inquiry, in turn, is governed by a four-part test:

> In determining whether a claim is ripe for review, we consider [1] if
> the issues raised are primarily legal, and [2] do not require further
> factual development, and [3] if the challenged action is final.  We also
> consider [4] the hardship to the parties of withholding court
> consideration.

*Id.* at 856 (internal citation omitted).  "The justiciability of a claim is a question of

law we review de novo."  *Am. Traffic Sols., Inc. v. City of Bellingham*, 163 Wn.

App. 427, 432, 260 P.3d 245 (2011) (citing *Coppernoll v. Reed*, 155 Wn.2d 290,

299-301, 119 P.3d 318 (2005)).

Each of the ripeness considerations is satisfied here.  First, the issues

raised by the City's claim are primarily legal.  The City's declaratory judgment

claim requires the court to interpret the Easement and determine whether it

grants sufficient real property rights to construct the proposed walkway as

5

described and specified by the City. As with any written contract, the proper interpretation of a written agreement regarding real property rights "is a question of law." *Bloome v. Haverly*, 154 Wn. App. 129, 137, 225 P.3d 330 (2010) (interpreting restrictive covenant).

Second, the issues raised "do not require further factual development." *Alim*, 14 Wn. App. 2d at 856. As explained in *Thun v. City of Bonney Lake*, 164 Wn. App. 755, 767, 265 P.3d 207 (2011), this consideration requires "the basic facts underlying a dispute to be resolved before the dispute reaches court." Here, those basic facts include the Easement itself, design documents showing the material structural components of the proposed walkway (the Planned Improvements), the City's stated intent to construct the walkway in accordance with those design documents, and Ebb Tide Association's opposition to the project. Because these basic facts are known, factual development is not required and the second ripeness consideration is satisfied.

Third, the challenged action is final. The trial court's final judgment and order reflects and incorporates its prior rulings that the Easement is valid (CP 3049-51), that the height restriction in the Easement equates to 1.84 feet above the finished first floor elevation of the Building, and that the phrase "public improvements, facilities, utilities and necessary appurtenances" in the Easement should be read to encompass some kind of improved walkway. Ebb Tide Association does not challenge any of these rulings.

The trial court's declaratory judgment ruling is also final. The City explained in its complaint that it had "engaged consultants to create a design for a walkway that would be constructed within the easement area" and it attached

6

to its complaint design documents showing the proposed walkway (the Planned
Improvements). The trial court, in turn, granted that limited relief, stating that "the
City has sufficient real property rights to construct a walkway within the easement
area, *the final design of which will [be] materially consistent with the planned
improvements . . . .*" (Emphasis added.) So limited, the trial court's judgment
and order granting declaratory relief in favor of the City is final and thus the third
ripeness consideration is likewise satisfied.

Fourth, Ebb Tide Association does not (and cannot) contest that
withholding declaratory relief to the City would create substantial hardship—thus
satisfying the fourth ripeness consideration. Our Supreme Court noted in *Jafar v.
Webb*, 177 Wn.2d 520, 525, 303 P.3d 1042 (2013), that "current hardship" is not
a strict requirement for ripeness. Here, if declaratory relief were withheld, the
City would be left without a determination of whether the Easement provides
sufficient real property rights to build the proposed walkway and progress toward
completing the project would be stifled.

Notwithstanding the above analysis, Ebb Tide Association argues that
declaratory relief cannot properly be granted here because the design of the
proposed walkway is only 30 percent complete and omits certain features (such
as railings and a wider walkway) that might cause the walkway—*as ultimately
constructed*—to exceed the scope of the Easement as interpreted by the trial
court. Expressed in terms of ripeness, Ebb Tide Association contends that
further factual development is required (the second ripeness consideration) and
the trial court's judgment and order granting declaratory relief in favor of the City
cannot be final (the third ripeness consideration) because the court's decision to

grant such relief is expressly premised on a "conceptual design" that is subject to change.

Ebb Tide Association's argument misconceives and misapplies the relevant ripeness considerations. The second ripeness consideration does not ask whether a party opposing declaratory relief (like Ebb Tide Association here) can hypothesize some factual development that could potentially affect or even obviate a trial court's ruling granting declaratory relief. Rather, it asks whether "the issues raised . . . do not *require* further factual development." *Alim*, 14 Wn. App. 2d at 856 (emphasis added). As discussed above, no such development is required here. And while the trial court's judgment and order granting declaratory relief in the City's favor does not address any and all potential contingencies, it is a final determination of each of the discrete issues discussed above, including whether the Easement grants the City sufficient real property rights to construct the walkway in accordance with the Planned Improvements. On this record, the City's claim is sufficiently ripe for judicial review.

For similar reasons, Ebb Tide Association's reliance on *Bloome* is misplaced. Applying justiciability principles, the court in *Bloome* held that a trial court cannot properly grant declaratory relief under the UDJA where "the record does not contain facts necessary for a court to resolve the apparent underlying dispute between the parties." 154 Wn. App. at 141. As the court explained, the record in *Bloome* did not contain those basic facts:

> Bloome has not put forth any construction plan over which the parties have had the opportunity to litigate as to its conformance with the covenant. Nor has he established that it is, in fact, impossible to construct a building on the downhill parcel without interfering with the view from the uphill parcel. In the absence of a dispute over whether

8

> actual building plans satisfy the covenant or of other evidence
> establishing a necessary minimum degree of interference with the
> view from the uphill property, a declaratory judgment as requested
> by either party would not conclusively settle the controversy between
> them.

*Id.* at 141-42. The court also noted that "nothing in the record indicates that Bloome either planned or plans to construct a building on the downhill parcel." *Id*. at 137. In the absence of such evidence, this court reversed the trial court's declaratory judgment on justiciability grounds because "the record does not establish the existence of an actual, mature dispute that could be conclusively resolved by the requested relief." *Id.* at 147.

*Bloome* is distinguished easily. Perhaps most important, the City here, unlike the parties in *Bloome*, did not fail to "put forth any construction plan over which the parties have had the opportunity to litigate as to its conformance with the [Easement]." *Id.* at 142. As discussed above, the City attached to its complaint design documents showing the material structural components of the proposed walkway (the Planned Improvements). And in sharp contrast to *Bloome*, there is no doubt that the City plans to construct the proposed walkway in accordance with the Planned Improvements. Thus, unlike in *Bloome*, the record here establishes the existence of an actual, mature dispute that could be conclusively resolved by the requested relief.[2]

---

[2] Just prior to oral argument, Ebb Tide Association submitted a Statement of Additional Authority citing *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993), for the proposition that "Washington courts . . . require clear and unequivocal evidence of the terms and character of the contract before specific performance is awarded." At oral argument, Ebb Tide Association's appellate counsel tied this authority to the ripeness issue. This argument is improper in two respects. First, the "purpose of RAP 10.8 is to provide parties with an opportunity to bring to the court's attention cases decided after the parties submitted their briefs." *Whitehall v. Emp't Sec. Dep't*, 25 Wn. App. 2d 412, 419 n.3, 523 P.3d 835 (2023) (quoting *Ghodsee v. City of Kent*, 21 Wn. App. 2d 762, 782 n.16, 508 P.3d 193 (2022) (internal quotation marks omitted)). Here, *Kruse* was decided 30 years *before* the parties submitted their briefs. Second, there is no claim

The City's claim for declaratory relief is sufficiently ripe for judicial review. The trial court did not err in deciding the claim on the merits, just as we do below.

B.     The Easement

Regarding the merits of the City's claim, Ebb Tide Association argues that the trial court erred in ruling that "the City has sufficient real property rights to construct a walkway within the easement area, the final design of which will [be] materially consistent with the Planned Improvements."  The interpretation of a contract regarding real property rights is a question of law, which we review de novo.  *Bloome*, 154 Wn. App. at 137.  While we disagree with the trial court's ruling that the Easement is ambiguous, we affirm the trial court's final judgment and order granting declaratory relief in the City's favor on additional grounds. *See Huff v. Wyman*, 184 Wn.2d 643, 648, 361 P.3d 727 (2015) ("we may affirm the trial court on any basis supported by the briefing and record below").

As noted previously, the principal issue below was whether the Easement granted the City sufficient property rights to construct the proposed walkway.  On that issue, there is no dispute that the proposed walkway, as set forth in the Planned Improvements, does not extend beyond the Easement right of way ("the following described property") or above the specified height restriction ("an elevation of 17.00 as referred to City of Edmonds Datum (Mean Lower Low Water)").  Instead, the dispute centers on whether the proposed walkway can extend below the surface of the beach.  Because the Easement does not expressly address that issue (for example, it does not provide a lower elevation

---

for specific performance in this case, so even if we overlook the date that *Kruse* was decided the opinion is not in any event helpful to the Court.

10

restriction similar to the upper elevation restriction), the trial court concluded that it is ambiguous.

We disagree with the trial court's ruling that the Easement is ambiguous. The Easement grants the City "a right-of-way easement for public access, use and enjoyment, together with the right to construct and maintain public improvements, facilities, utilities, and necessary appurtenances, over, through, across, and upon the following described property."  It then limits the space in which those improvements can be constructed in two ways.  First, through a detailed description of the "following described area," the Easement limits the *horizontal* dimensions of the permissible improvements.  *See supra* at n.1.   And second, through a detailed description of the "horizontal plane having an elevation of 17.00 as referred to City of Edmonds Datum (Mean Lower Low Water)," the Easement limits the *height* of the permissible improvements.  *Id.* Critical here, the Easement places no limitations on the *depth* of the permissible improvements.  The Easement is not ambiguous in that regard; the express, unambiguous language of the Easement does not limit the depth of the permissible improvements.  The trial court mistook the *absence of a limitation* regarding depth as ambiguity.  *See, e.g., Wash. Monumental & Cut Stone Co. v. Murphy*, 81 Wash. 266, 270, 142 P. 665 (1914) ("The contract itself would hardly seem ambiguous, since, by particularizing the things included . . . it excluded all things not enumerated.").

But even if we were to agree with the trial court that the Easement is ambiguous with regard to depth, the result would be the same.  When the meaning of a contract affecting real property is unclear, "we must consider the

11

surrounding circumstances that tend to reflect the intent of the drafter and the purpose of [the agreement]." *Bloome*, 154 Wn. App. at 138 (internal quotation marks omitted); *see also* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.1(1) (AM. LAW INST. 2000) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created."). Having concluded that the Easement is ambiguous, the trial court admitted extrinsic evidence to ascertain the intent and purpose of the agreement. "When interpretation depends on factual determinations such as the credibility of extrinsic evidence or a choice among reasonable inferences to be drawn from extrinsic evidence, we review the fact finder's determinations of such matters for substantial evidence." *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 769, 275 P.3d 339 (2012). While we disagree with the trial court's ruling that the Easement is ambiguous, we agree with the City that substantial evidence supports the trial court's analysis.[3]

Scott Snyder, a City attorney who was involved in drafting the Easement, testified regarding two complementary purposes of the Easement. The first was to provide "some sort of firm footing for seniors, moms with baby buggies, and other people to cross the tide flat." The second was "to have a designated pathway" and thereby address residents' trespass concerns. *Id*. These

---

[3] Even if the Easement is ambiguous and extrinsic evidence is necessary to interpret it, this does not affect the ripeness inquiry. *See, e.g., In re Marriage of Bronstein*, 167 Wn. App. 1003, *5 (2012) (consideration of extrinsic evidence to interpret property settlement agreement did not preclude judicial review on ripeness grounds, holding "While deciding the issue requires more evidence, it does not require further factual development."). While *Bronstein* is unpublished, we may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision." GR 14.1(c).

purposes cannot be achieved if, as Ebb Tide Association asserts, the Easement does not permit the City to construct pilings below the surface of the beach. Two witnesses so testified. Dr. Jeff Parsons, an environmental engineer, testified that without below-ground pilings a walkway would fall apart shortly after installation. Dr. Willie Ahn, an expert in marine structures, similarly testified that a walkway built without pilings on the Easement right of way would deform, crack, and eventually wash away because of the active currents in the area. Because below-grade structures are necessary to achieve the intent and purposes of the Easement, the trial court correctly interpreted the Easement to permit such improvements.

The trial court's interpretation of the Easement is also consistent with several principles of contract construction. We "must avoid construing contracts in a way that leads to absurd results." *Grant County Port Dist. No. 9 v. Wash. Tire Corp.*, 187 Wn. App. 222, 236, 349 P.3d 889 (2015). Additionally, "[o]ur goal is to interpret the agreement in a manner that gives effect to all the contract's provisions" and "harmonize clauses that seem to conflict." *Nishikawa v. U.S. Eagle High, LLC.,* 138 Wn. App. 841, 849, 158 P.3d 1265 (2007).[4] And lastly, differences in contract wording indicate differences in intended meaning. *See, e.g., Sunbreaker Condo. Ass'n v. Travelers Ins. Co*., 79 Wn. App. 368, 376-78, 901 P.2d 1079 (1995) (policy structure and language evidenced intent to treat dry rot and wind-driven rain differently as distinct perils).

---

[4] *See also* RESTATEMENT § 4.13, cmt. b ("the holder of an easement . . . is entitled to make any use of the servient estate that is reasonable for enjoyment of the servitude, including the right to construct, improve, repair, and maintain improvements that are reasonably necessary").

Each of these principles of contract construction supports the trial court's interpretation of the Easement. The Easement allows the City to construct and maintain public improvements through the designated corridor so long as the improvements do not extend above a "horizontal plane having an elevation of 17.00 as referred to City of Edmonds Datum (Mean Lower Low Water)." This upper height limit is more than ten feet above beach level and would be rendered superfluous if, as Ebb Tide Association asserts, the Easement does not permit the City to construct a below-grade foundation. As the City's witnesses testified, such a walkway would fall apart and wash away. We should avoid that absurd result. And while the Easement limits the area and height of the permissible improvements, it does not similarly limit depth. Under Washington law, this difference confirms, as the trial court ruled, that the Easement does not limit the depth of the proposed walkway.[5]

Lastly, *Coleman v. City of Everett*, 194 Wash. 47, 76 P.2d 1007 (1938), cited by Ebb Tide Association in support of its argument, is inapposite. The issue in *Coleman* was whether the term "along" in an easement permitted projects to be built above ground. *Id.* at 49. The court determined that the easement did not permit water lines to be built above ground, in part, because the city first laid the pipe under the surface of the easement and then later proposed constructing a pipeline above ground. *Id.* at 49-50. Here, in contrast, the City has not yet constructed any improvements on the Easement right of way, so there is no

---

[5] Ebb Tide Association relies instead on the rule that a contract should generally be construed against its drafter. But "a reviewing court should not resort to the rule of interpretation that construes an agreement against its drafter unless the intent of the parties cannot otherwise be determined." *Wash. Prof'l Real Estate LLC v. Young*, 163 Wn. App. 800, 818, 260 P.3d 991 (2011). Here, the intent of the parties can readily be ascertained as indicated in the text above.

conduct from which to derive the parties' intent as the court did in *Coleman*. Additionally, as discussed above, the essential purpose of the Easement cannot be achieved in the absence of a proper foundation.  For these reasons, Ebb Tide Association's reliance on *Coleman* is misplaced.[6]

### III

The trial court correctly concluded that "the City has sufficient real property rights to construct a walkway within the easement area, the final design of which will [be] materially consistent with the Planned Improvements," and granted declaratory relief in the City's favor.  We affirm.

*Feldman, J.*

WE CONCUR:

*Díaz, J.*

*Chung, J.*

---

[6] Ebb Tide Association's remaining arguments are insubstantial and can be addressed summarily.  First, Ebb Tide Association claims that "the trial court erred in granting the declaratory relief because the Planned Improvements [would] create an exclusive use of a non-exclusive easement."  An exclusive easement precludes the servient estate from using the easement area and, in effect, passes fee simple title to the grantee. *Johnson v. Lake Cushman Maint. Co.*, 5 Wn. App. 2d 765, 784-85, 425 P.3d 560 (2018).  Here, in contrast, the walkway will be open to the public and Ebb Tide Association and its members retain the right to use the land in ways not inconsistent with the uses granted in the Easement.  Second, Ebb Tide Association argues, "In seeking to convert a non-exclusive easement to the City's exclusive use, the City sought, and the trial court effected, an improper taking without just compensation in violation of the Washington Constitution."  Ebb Tide Association largely abandons this argument in its reply brief, which clarifies that such a taking occurred (if at all) only if the trial court "misconstrue[d] the easement to grant rights to the City not provided therein."  As explained in the text above, that did not occur here.  Ebb Tide Association's takings argument thus fails.